J. T. BLACKWELL, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion filed February 26, 1931.

998

*John H. Carter* and *John H. Carter, Jr.,* of Marianna, for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Carter, Solomon & Pierce,* of Marianna, for the State.

STRUM, C.J.—Plaintiff in error, hereinafter called the defendant, was adjudged guilty of murder in the first degree and sentenced to death, to which judgment he takes writ of error.

In this court, it is first contended by the defense that the trial court erred in overruling defendant's challenge for cause of the veniremen H. R. Pitts and D. M. Newman, both of whom apparently were thereafter peremptorily challenged, as neither appears to have served on

the trial jury. Later on, and before the jury was sworn, the defendant attempted to peremptorily challenge the veniremen Bailey and Bowen. An objection by the State on the ground that the defendant had exhausted his peremptory challenge was sustained, and the two veniremen last named served on the trial jury.

The defendant contends that the court's asserted error in overruling his challenge for cause to veniremen H. R. Pitts and D. M. Newman, thereby holding these veniremen competent to serve as jurors, erroneously required defendant to use two peremptory challenges to remove those veniremen, which resulted in forcing on the defendant the jurors Bailey and Bowen, whom the defendant desired and attempted to challenge peremptorily.

First to be determined is whether or not the veniremen H. R. Pitts and D. M. Newman were competent.

In criminal cases, whenever after a full examination the evidence given upon a challenge leaves a reasonable doubt in the mind of the trial judge of the impartiality of a juror, the defendant should be given the benefit of the doubt and his challenge of such juror for cause should be sustained. Crosby v. State, 90 Fla. 381, 106 So. 741; Walsingham v. State, 61 Fla. 67, 56 So. 195.

In Reynolds v. U. S., 98 U. S. 145, 156; 25 L. Ed. 244, 247, and again in Ex parte Spies, 123 U. S. 131, 31 L. Ed. 80, 90, it was said: "Upon the trial of the issue of fact raised by a challenge to a juror, in a criminal case, on the ground that he had formed and expressed an opinion as to the issues to be tried, the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law are necessary to raise the presumption of partiality. The question thus presented is one of mixed law and fact,

and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. * * * It must be made clearly to appear that upon the evidence the court ought to have found that the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the conscience or discretion of the court." See also Hopt v. People of Utah, 120 U. S. 430, 30 L. Ed. 708.

In Olive v. State, 34 Fla. 203, 15 So. 925, it was said: "The fixedness or strength of the existing opinion is the essential test of a juror's competency, and the court should look specially to such state of mind in passing upon the question of qualification." Then, quoting from O'Conner v. State, 9 Fla. 215, it is further said: "If such impressions become fixed and ripen into decided opinions, they will influence a man's conduct, and will create, necessarily, a prejudice for or against the party to whom they are directed, and should disqualify him as a juror, but if, in obedience to the laws of his organization, his mind receives impressions from the reports he hears, which have not become opinions fixed and decided, he would not be disqualified." Olive v. State, *supra.*

In O'Connor v. State, 9 Fla. 215, the following language was further quoted with approval: "The true doctrine is, that if the juror's conceptions are not fixed and settled, not warped by prejudice, but are only such as would naturally spring from public rumor or newspaper reports, and his mind is open to the impressions it may receive on the trial, so as to be convinced accord-

ing to the law and the testimony, he is not incompetent.'' The language just quoted is preceded in O'Connor v. State with the further statement that ''the human mind is so constituted that it is almost impossible, on hearing a report freely circulated in a county or neighborhood, to prevent it from coming to some conclusion on the subject; and this will always be the case while the mind continues susceptible to impressions.'' If a conclusion or impression of the character last mentioned,—one which would readily yield to the evidence,—render a juror incompetent, in this day of rapid and efficient transportation and communication, it would be highly difficult, if not almost impossible, to procure a trial jury in the county where a crime of any moment was committed.

In Lamb v. State, on petition for re-hearing, 90 Fla. 856, 107 So. 535, the existing rule was further stated in the following language: ''A person called as a juryman may have formed an opinion based upon rumor or upon newspaper statements, but if he has expressed no opinion as to the truth of the newspaper statements he is still qualified as a juror if he states that he can fairly and impartially render a verdict thereon, in accordance with the law and the evidence, and the court shall be satisfied of the truth of such statements.'' See also McGowan v. State, 89 Fla. 5, 102 So. 890.

The rule has also been considered with specific reference to the competency of prospective jurors in the following cases, in which the examination of the veniremen is set forth at length, and in all of which as strong, if not a stronger showing, was made against the competency of the juror than in the case now at bar: Marlow v. State, 49 Fla. 7, 38 So. 653; English v. State, 31 Fla. 340, 356, 12 So. 689; Denham v. State, 22 Fla. 664;

Montague v. State, 17 Fla. 662; Brown v. State, 40 Fla. 459, 25 So. 63; Melbourne v. State, 51 Fla. 69, 40 So. 189; Andrews v. State, 21 Fla. 598. See also O'Connor v. State and Olive v. State, *supra*.

For precision in consideration, the *voir dire* examination of the veniremen as to whom a challenge for cause was overruled, is reproduced in full:

H. R. PITTS:

BY MR. McRAE: (for the State) "Q. Where do you live, Mr. Pitts? A. On the west side of the river below Clarksville. Q. This is the case of State of Florida vs. J. T. Blackwell, charged with the crime of murder, to-wit: the killing of one C. D. Clark in this County, on or about the 21st day of April; do you know anything of the facts and circumstances of the case? A. Well, I just heard it remarked that he was killed. Q. Did what you have heard purport to be the evidence or facts in the case? A. Yes, sir, I heard it. Q. From what you heard have you formed or expressed any opinion in the case as to the guilt or innocence of the defendant? A. Yes, sir, I expect I have. Q. Is that a fixed opinion? A. No, sir. Q. Or is it one that would readily yield to evidence if you were taken on this jury? A. Yes, sir, it would yield, it ain't fixed. Q. You could disregard totally what you have heard and know about this case and sit upon this jury and then render a true verdict according to the evidence that you hear from the stand? A. Yes, sir. Q. You are not conscious of any outside matter or thing that would influence you, are you? A. No sir. Q. Are you acquainted with Mr. Blackwell, the defendant? A. Yes sir. Q. Are you related to him? A. No, sir. Q. Were you acquainted with C. D. Clark in his lifetime; A. Yes sir. Q. Were

you related to him? A. No, sir. Q. Have you any bias for or prejudice against this defendant? A. No, sir. Q. Have you any conscientious scruples against the infliction of capital punishment for crime? A. No.

BY MR. J. H. CARTER: (for the defendant) Q. Did you read the account in the newspaper about how this killing occurred? A. No, sir, I haven't read it. Q. What you have heard about it was over here at Blountstown? A. No, sir. Q. Or was it talked outside? A. Yes, sir, talked outside. Q. You say what you hear purports to be the facts in the matter? A. Yes, sir, supposed to be the facts. Q. You state that notwithstanding what you have heard, and the circumstances which purport to be the facts, you could disregard all of that and base your verdict upon the evidence as you hear it from the witness stand? A. Yes, sir, I don't know whether it was facts or not. Q. If a witness were to go upon the stand and testify in substance according to the purported facts as you have heard them, would that tend to strengthen the testimony of that witness in your opinion? A. Yes, sir. Q. If a witness should go upon the stand and testify contrary to the purported facts as you have heard them, would that tend to weaken or discredit the testimony of that witness in your mind? A. Well, I don't know whether it would or not, it would be according to the evidence. Q. I asked you with reference to the evidence of that witness, if he should testify to a state of facts or material fact contrary to the way you have heard it—my question was if a witness should go on the stand and testify contrary to what you heard about it, tend to weaken the testimony of that witness in your opinion? A. It would.

MR. CARTER: We submit he is disqualified.

MR. McRAE: Q. So you do not feel you could disregard what you have already heard and try the case solely upon the evidence? A. Yes, sir, I haven't heard it from any of the witnesses, just remarked. Q. Can you lay aside what you have heard and sit upon this jury and make up your verdict solely from the evidence here? A. Yes, sir.

BY THE COURT: Q. Now, Mr. Pitts, you say it would take testimony to remove the opinion you entertain at this time? A. Yes, sir. Q. Would that opinion yield readily to the testimony that would be given by the witnesses that would testify before you as a juror? A. Yes, sir. Q. Then you would be guided solely by the testimony in the trial of the case here, and would not allow what you entertain at this time to interfere with what verdict you would desire to tender as a juror? A. Yes, sir.''

D. M. NEWMAN:

BY MR. McRAE: (for the State) ''Q. Mr. Newman, this is a case of State of Florida vs. J. T. Blackwell, charged with the crime of murder, to-wit; the killing of C. D. Clark in this county on or about April 21st; do you know anything of the facts and circumstances in the case? A. I suppose I do, I heard a couple testify before the corner's jury is all I know about it. Q. You heard two of the witnesses? A. A portion of it. Q. From what you heard you formed and expressed an opinion in the case, have you? A Of course I had an opinion in the case, yes, sir. Q. Do you think that's a fixed opinion, Mr. Newman, or is it one that would readily yield to the testimony if taken upon this jury? A. How is that? Q. Is it a fixed opinion or one that would readily yield to the evidence? A. I wouldn't say it's

a fixed opinion, but I have an opinion. Q. Do you feel you could sit upon this jury and disregard what you have heard and know and try the case solely upon the evidence as you hear it from the stand? A. Oh, yes. Q. Would you do that? A. Sure, yes sir. Q. You know the defendant Blackwell? A. Yes, sir. Q. Are you related to him? A. Not that I know of, no sir. Q. Have you any bias for or prejudice against him? A. Not a bit in the world. Q. Did you know Sheriff Clark, the deceased? Yes, sir. Q. Were you related to him? A. No, sir. Q. Have you any conscientious scruples against the infliction of capital punishment for crime? A. Well, I don't know hardly how to answer you, whether I can satisfy you or not. If it's necessary, if the case warrants it and I think it's justifiable, I could. Q. If you were taken on the jury and you were convinced from the evidence that the defendant was guilty of murder in the first degree, would you render such a verdict? A. I would. Q. Notwithstanding the fact you believe it might be the means of taking his life? A. Yes, sir. Q. You would let the verdict speak the truth? A. Yes, sir. Q. Are you conscious of any outside matter or thing that might influence you in rendering your verdict? A. How is that? Q. Are you conscious of any outside matter or thing that would influence you in rendering your verdict? A. No, sir.

BY J. H. CARTER: (for defendant) Q. Were you present during the holding of the inquest of the coroner's jury? A. No, sir. Q. Where did you hear the witnesses testify that you spoke of? A. I didn't quite understand the question, excuse me. I was in the court room here and heard a portion of two of the witnesses' testimony. Q. Just a portion of the testimony? A. Yes, sir.

▮▮▮▮

Q. Were you here when the coroner's verdict was announced? A. No, sir. Q. You didn't hear that? A. No, sir. Q. From what you heard you formed some opinion, but not a fixed opinion? A. No, sir. Q. If a witness should go on the stand and testify to the contrary of what the evidence that you heard here, contrary to that evidence, would it weaken or discredit the testimony of that witness in your opinion that he was not telling the truth like it was, or not? A. I didn't quite understand the question? Q. If a witness should go on the stand and testify contrary to the testimony that you heard at the coroner's inquest, would that fact tend to weaken his testimony, I mean the present witness' testimony in your opinion? A. It would depend on how it come, it would have something to do with it. Q. You mean what you heard at the coroner's inquest would have something to do with it? A. No, sir, I mean the witness I might hear now might affect the other, one way or the other. Q. If a witness were to come on the stand now and testify in substance the same as you heard the testimony at the coroner's inquest, would that tend to strengthen the testimony of that witness in your opinion, make you think he was telling the straight of it or not? A. Well, I think so. Q. But if a witness were to testify differently from what you have heard you don't think that would weaken the testimony of that witness on account of what you have heard before? A. Well, if I understand how I feel about it, if I should serve on the jury I would go according to the evidence I heard in this case at this time. Q. And not be influenced by what you heard at the coroner's inquest? A. No, sir, even though I have an opinion, but I would be governed according to the evidence in this case at this time. Q. Would it require

any evidence to remove the opinion which you have formed up to now? A. I would think so, yes, sir. Q. Would it take more evidence to establish before you the facts contrary to what you have already heard than it would if you hadn't heard anything about it? A. No, sir, I don't think so. Q. It wouldn't take any more evidence to change that opinion? A. Well, you understand I have an opinion from what I have heard. Q. Suppose you state it in your own way then? A. I have an opinion you understand, but as I said should I serve on the jury at this time I would be governed according to the evidence in the case because I was not trying the case then and that's what I heard and that made me naturally form an opinion but in a way I should forget all about that and go according to the evidence I hear today if I am accepted on the jury.''

Taking the examination of these two veniremen as a whole, and testing their competence by the rule already stated, we unhesitatingly conclude that there is no such showing of bias, prejudice or of a definite or fixed opinion as to the guilt or innocence of the defendant as to warrant a reversal of the action of the trial judge in holding them competent. The trial judge has the advantage of personal observation of the veniremen, and of their demeanor and manner of answering, which is denied to this court. Neither of these veniremen held a *fixed* opinion. Both acknowledged an opinion based largely upon common talk, but there is no showing that they had either formed or expressed an opinion as to the truth of what they had heard, nor was such opinion formed from talking with witnesses in the case. Newman had heard a portion of the testimony of two witnesses at the preliminary hearing, but whether these were

witnesses upon mere formal matters, or upon disputed matters connected with the homicide, does not appear. Both veniremen testified that such opinions would readily yield to the evidence. While that statement alone will not qualify a juror against a clearly contradictory showing (Andrews v. State; Olive v. State; Walsingham v. State, *supra;* Johnson v. Reynolds, 97 Fla. 591, 121 So. 793), the circumstances developed by this examination are not such as to render the truth of that statement improbable or to leave such a doubt in the minds of this court as to the impartiality of the juror, as to justify a reversal of the trial judge who personally heard the examination and who was satisfied as to the jurors' impartiality.

The trial judge having properly overruled the challenge for cause of the veniremen H. R. Pitts and D. M. Newman, it follows that the defendant was not prejudiced by the order overruling the peremptory challenges of the jurors Bailey and Bowen.

In Walsingham v. State, 61 Fla. 67, 56 So. 195, relied upon by defendant, the objectionable juror testified that he had formed a *fixed* opinion and had talked to one of the witnesses about the homicide, which witness was apparently a relative of the deceased, and from that conversation the juror had formed an opinion, which he still retained and testified that if that witness were called to the stand and made the same statement before the jury, the fact that the witness made the same statement twice would give strength to the testimony of that witness in the mind of the juror in question. Those matters, together with other circumstances developed by the examination of the juror, convinced this court that he should have been excused, notwithstanding his further

assertion that he would be governed by the evidence. The dissimilarity between the situation just stated and the situation now before us is quite substantial.

Defendant also assigns as error the action of the trial court in excusing, of its own motion, the venireman Charlie Davis, because that venireman appeared to be related to the deceased, to which action the defendant excepted. There was no error.

One accused of crime is entitled to a fair and impartial jury to try his cause, but he is not entitled to any particular jury or juror. Defendant's right is not one of selection, but is a right to reject jurors who are biased, prejudiced or otherwise incompetent. In *excusing* prospective jurors, the trial court exercises a very broad discretion, much more so than in the retention of jurors. When it appeared that the veniremen was related to the deceased, for whose murder the defendant was about to be tried, the trial judge was well within his discretion in excusing the venireman in question. Melbourne v. State, 51 Fla. 69, 40 So. 189; Ammons v. State, 65 Fla. 166, 61 So. 496; Davis v. State, 90 Fla. 322, 105 So. 845.

The defendant also assigns as error the giving of certain special charges requested by the State. We have examined all these charges and find no harmful error. Only one of the questioned charges requires comment. It is the following portion of special charge number one, given in connection with the claim of self defense: "Third. That he, (the defendant) resorted to all means consistent with his own safety to avert the danger, and to avoid the necessity of assulting his adversary."

The defendant contends that the word "reasonable" should have preceded the word "means" so that the charge would have read that the defendant "resorted to

all reasonable means consistent with his own safety,'' etc. Abstract precision would have been served by the use of the word ''reasonable'' as indicated.

In the circumstances of this case, however, there was no harmful error in the language of that charge for two reasons. First, the trial court in its general charge referred to the defense of self defense and *inter alia* charged that a person is justified in taking life when, without being the unintentional aggressor in bringing on the difficulty, he is or reasonably believed himself to be in present imminent danger of death or of receiving some great bodily harm at the hand of another, and his acts are, or ''reasonably'' seemed to be necessary to protect himself from such imminent danger. This charge was given to the jury in connection with that portion of the special charge hereinabove quoted, which was also upon the subject of self defense. Second, the facts of this case clearly show that there was no question before the jury as to whether or not the defendant exercised the proper *degree* of effort to avert his assault upon the deceased. The evidence does show that the defendant did not retreat at all, and used no degree of effort to avert the assault. We are convinced therefore that the jury was not misled, nor was the defendant prejudiced by the omission of the word ''reasonable'', in view of the clearly established facts in evidence.

Defendant also contends that the judgment should be reversed because the verdict does not follow the indictment in respect to defendant's name. The indictment was returned against ''J. T. Blackwell'', and all the proceedings are styled, ''State of Florida v. J. T. Blackwell''. The verdict reads: ''We, the jury, find the defendant, James T. Blackwell, guilty of murder in the first degree. So say we all. C. J. Bailey, Foreman.''

Besides naming the person, the verdict finds "the defendant" guilty, etc. The language of the verdict leaves no doubt as to who the jury was referring to. Verdicts in criminal cases should be certain and import a definite meaning free from ambiguity. Any words, however, that convey beyond a reasonable doubt the meaning and intention of the jury are sufficient, and all fair intendments should be made to sustain them. This verdict is quite as certain, if not more so, than that sustained in Jounson v. State, 51 Fla. 44, 40 So. 678, and Ewert v. State, 48 Fla. 36, 37 So. 334. The verdict is a part of the record proper (Taylor v. State, 88 Fla. 555, 102 So. 884), and should be construed in the light of other portions of the record. See also Licata v. State, 81 Fla. 649, 88 So. 621; Morris v. State, 54 Fla. 80, 45 So. 456; O'Neal v. State, 54 Fla. 96, 44 So. 940.

We have carefully examined the evidence in the case with respect to the assignment directed to its sufficiency to support the verdict, as well as other assignments of error appearing in the record, but finding the evidence to be sufficient to support the verdict and that there are no other harmful errors in the record, the judgment is

Affirmed.

WHITFIELD, ELLIS, TERRELL AND BROWN, J.J., concur.

BUFORD, J., not participating.