ROBERT B. HADDOCK v. STATE.

176 So. 782.

Opinion Filed October 27, 1937.

*D. O. Rogers,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell* and *John L. Graham,* Assistant Attorney General, for the State.

CHAPMAN, J.—The parties hereto will be referred to in this opinion as they appeared in the lower court as the State and defendant. Defendant was indicted by a grand jury of Polk County, Florida, for murder in the first degree and upon trial was convicted of murder in the second degree and was sentenced to twenty years in the State Prison. On writ of error to this Court the judgment was reversed and a new trial awarded. See Haddock v. State, 121 Fla. 167, 163 Sou. Rep. 482. On going down of the mandate the cause was transferred from the Circuit Court to the Criminal Court of Record of Polk County when an information was filed and upon arraignment entered a plea of not guilty. The cause was tried by a jury in the Criminal Court of Polk County and a verdict of second degree murder was rendered, a motion for new trial made and overruled when the court sentenced the defendant to the State

Prison for a period of twenty years and the case is here for review on writ of error.

The first question for consideration by this Court is: Did the Criminal Court of Record of Polk County have jurisdiction of the defendant and the subject matter of the cause so as to enable it to render a lawful judgment? It is contended that the Criminal Court of Record of Polk County, Florida, under Section 4349, 4350, 4351 and 4352, C. G. L. 1927, never acquired jurisdiction. That jurisdiction at the time of the trial of defendant was in the Circuit Court after the going down of the mandate from this Court because of a failure to comply, substantially, with the sections *supra*. The record shows that the Circuit Court by an order dated February 6, 1936, upon the joint motion of counsel for defendant and the State Attorney ordered a transfer of this cause to the Criminal Court of Record. The information was filed in the Criminal Court of Record on January 18, 1936, by the County Solicitor of Polk County, Florida. The information in the Criminal Court of Record had been pending there from January 18th to the date of the order of transfer as entered by the Circuit Court on February 6, 1936. Counsel for the defendant, according to the record, joined with the State Attorney requesting the entry of the order. The same attorney joining in this requested order appeared as counsel for the defendant in the Criminal Court of Record and likewise has prosecuted the appeal here. The record fails to disclose an arraignment of the defendant or a filing of a plea thereto but the lower court in its charges to the jury recited the fact that the defendant filed a plea of not guilty to the information. The condition of the record was well known to counsel for the defendant at the time of going to trial. He had ample opportunity to raise this question by plea in abatement. The Criminal Court

of Record of Polk County, Florida, acquired jurisdiction of the cause upon filing of the information on January 18, 1936. See: Section 28 of Article V of the Constitution of Florida; also State, *ex rel.* Buckheitt, v. Butt, 25 Fla. 258, 5 Sou. 594. After the defendant and counsel appeared in the Criminal Court of Record and participated in each step of the trial until a verdict was filed by the jury on February 22, 1936, with a complete and full knowledge of the entry of the order of the Circuit Court on February 6, 1936, and thereafter by motion in arrest of judgment, contention that the Criminal Court of Record was without jurisdiction comes too late. We think this defense should have been presented by plea in abatement by the defendant and his counsel prior to filing a plea of not guilty and for this reason such error, if any, was waived by defendant by proceeding with the trial of the cause. See Hicks v. State, 97 Fla. 199, 120 Sou. Rep. 330; Colson v. State, 51 Fla. 19, text p. 35, 40 Sou. 183.

Defendant by profession is a dentist and practiced in the City of Lakeland for approximately twenty years. He was fifty years of age, married and had two sons and two daughters. His wife died when his girls were young and he never remarried. He had the double responsibility of supporting his family by following his profession and doing a considerable part of the housekeeping duties. The girls at the time of the traagedy were 11 and 15, respectively. The girls had attended the schools at Lakeland and the father wanted to see them complete, and with this idea, suggested to his older daughter that attention of boys or men would interfere with her school work. The father left home for his office around 8:30 A. M. on July 2, 1934, and had but a few blocks to travel from his home to his office. The deceased, about 16 or 17 years of age, had at-

tended school at Lakeland and had had employment at a
bakery about the time of the trouble. The young man had
been calling at the Haddock home to see the 15-year-old
daughter during the absence of the father and while he was
at the office. The evidence is conflicting about the deceased
being a welcomed guest in the Haddock home after the
father had left for his office and the record shows that he
was there frequently and this was unknown to the father.

The record shows an improper relation between de-
ceased and the older daughter of the defendant. This oc-
curred when she was approximately 15 years of age and
occurred on the premises when the father was away. This
relation had existed for sometime and on the day of the
tragedy the deceased was at the Haddock home when the
younger daughter telephoned her father's office. He was so
advised by his office help and further told of the improper
relation between deceased and his older daughter and her
probable ruin. He took his car and immediately went to
his home to see about his daughter and within a few min-
utes after leaving his office found the deceased near his
home and was shot by the defendant and shortly thereafter
he died.

We are not unmindful of the utterances of this Court
in passing upon a single instruction or charge to the effect
that it should be considered in connection with all other in-
structions and charges bearing upon the same subject, as
was fully stated in Lewis v. State, 55 Fla. 54, text p. 63, 45
Sou. Rep. 998, when it was said:

"It is settled law in this court that in passing upon a
single instruction or charge it should be considered in con-
nection with all the other instructions and charges bearing
on the same subject, and if, when thus considered, the law
appears to have been fairly presented to the jury, an assign-

ment predicated upon the giving of such instruction or charge must fail, unless under all the peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury. Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and authorities therein cited; Davis v. State, 54 Fla. 34, 44 South. Rep. 757; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761; Cross v. Aby, decided here at this term."

The lower court after having instructed and charged the jury upon the law of the case of its own motion, further charged:

"However, gentlemen, the Court of its own motion further charges you that the mere statement made to the defendant, that Guy Harvard Haynes, Jr., had committed a felony upon the daughter of defendant, does not establish that a felony had been committed; it is a question of fact for you to determine from the evidence whether or not a felony had been committed by Guy Harvard Haynes."

The record shows the defendant acquired knowledge for the first time of the violation of the chastity of his 15-year-old daughter some few minutes *prior* to the firing of the fatal shot. This court passed on a similar question in the case of Whidden v. State, 64 Fla. 165, text pages 166 and 167, 59 Sou. Rep. 561. The Court reversed for a new trial the exclusion of the following proffered evidence at the trial by the defendant:

"At the trial the defendant as a witness offered to testify that about twenty minutes before the fatal shooting on Monday morning the defendant's wife asked him not to leave home and told him that on the Saturday night before, the deceased had broken in her house and room in the night time and made an assault upon her, and that he had

told her at the time that if she breathed it to the defendant, her husband, he, the deceased, would choke her stiff; and that for these reasons his wife cried and begged the defendant not to go and that this was about twenty minutes before the shooting which occurred a short distance away. It was explained that this testimony was offered upon the theory that it is proper testimony to go to the jury in order that they may determine the state of mind that the defendant was in at the time he did the shooting, in order that the jury may determine whether the killing was done from and with a premeditated design, or done under such circumstances as would reduce the killing to some lesser degree of unlawful homicide, other than murder in the first degree. This testimony was excluded, and the only substantial error disclosed is predicated on such exclusion.

"In a prosecution for murder in the first degree for the unlawful killing of a human being from a premeditated design to effect the death of the person killed, or any human being, the defendant under a plea of not guilty may introduce any relevant and proper evidence tending to show a lack of premeditated design in the admitted killing so as to reduce the offense charged to a lower degree of homicide. This defense is not inconsistent with evidence tending to show self defense.

"A sudden transport of passion, caused by adequate provocation, if it suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previously formed design, may not excuse or justify a homicide, but it may be sufficient to reduce a homicide below murder in the first degree, although the passion does not entirely dethrone the actor's reason. See Smith v. State, 83 Ala. 26, 3 South. Rep. 551; Olds v. State, 44 Fla. 452, 33 South. Rep. 296; State v. Cancienne, 50 La. Ann. 847,

24 South. Rep. 134. If the wife did in fact make the disclosures to her husband, the defendant, as stated, it may have aroused his passions. Whether the husband was so told and the effect, if any, it had on his mind at the time of the homicide were for the jury to decide."

In the case of Collins v. State, 88 Fla. 578, text p. 584 and 585, 102 Sou. Rep. 880, this Court said:

"But anger is a motive which sometimes impels one to murder another, and because it is overwhelming in its force and sweeps prudence and consideration aside, it is none the less a motive, and is in no degree an excuse that will relieve the affected one from responsibility for criminal homicide, and such state cannot be said to be that of an insane person." * * *

"The act of the seducer or adulterer has always been treated as a general provocation. Sexual intercourse with a female relative of another is calculated to arouse ungovernable passion, especially in the case of a wife. See McNeill v. State, 102 Ala. 121, 15 South. Rep. 352; State v. Yanz, 74 Conn. 177, 50 Atl. Rep. 37, 54 L. R. A. 780; Rowland v. State, 83 Miss. 483, 35 South. Rep. 826; State v. John, 30 N. C. (8 Ired. Law) 330; State v. Young, 52 Ore. 227, 96 Pac. Rep. 1067. But in such case the slayer can not take time and deliberate upon the wrong and act upon an impulse to avenge the insult by taking the life of the wrongdoer. If reasonable time has elapsed for the passions to cool, or if after merely learning of the outrage against his marital rights the wronged individual immediately takes vengeance on the other by pursuing and killing him, the offense is murder, not manslaughter. See 13 R. C. L. 795 and cases cited above; Jackson v. State, 91 Ga. 271, 18 S. E. Rep. 298; Rogers v. State, 128 Ga. 67, 57

S. E. Rep. 227; State v. Harrell, 97 Mo. 105, 10 S. W. Rep. 387; State v. Samuel, 48 N. C. (3 Jones' Laws) 74."

It is not so much a question of whether or not the chastity of the daughter of the defendant had been actually violated and the existence or non existence of this fact had been presented or fully established by competent evidence to the satisfaction of the jury, but whether the knowledge, information and belief of this fact or facts was in the mind of the defendant when he left his office to go to his home to remove therefrom an intruder and whom the defendant had been told shortly prior thereto had violated the chastity of his 15-year-old daughter. The charge given to the jury by the lower court is deficient in this particular. If we do justice in this cause we are required to stand in the shoes of this defendant some few minutes prior to firing the fatal shot, and have all information then known to him and his daughter and her relation to the deceased and let the jury determine from the evidence if the defendant was at the time overwhelmed with anger and did or did not possess such mental capacity to be legally responsible for the act committed. The verdict rendered no doubt is reflected in the charge assigned as error. Section 4 of the Bill of Rights of the Constitution of Florida says:

"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, *and right and justice* shall be administered without sale, denial or delay." (Emphasis supplied.)

When we consider the entire record of this cause, the entire charge of the court, the charge assigned as error, and the verdict of the jury, we are not able to say that "right and justice has been administered," but for the error pointed

out the judgment appealed from is reversed and a new trial granted.

ELLIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., concurs in the conclusion.