ROBERT COVINGTON, Appellant, v. STATE, Appellee.

200 So. 531

Division B

Opinion Filed January 24, 1941

Rehearing Denied, Special Division B, February 21, 1941

*Randolph Calhoun,* for Appellant;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General, for Appellee.

PER CURIAM.—On November 14, 1939, the appellant, Robert Covington, was indicted for the crime of murder in the second degree by a grand jury of Sarasota County, Florida, for the unlawful killing of Mary Lee Covington on the 18th day of August, 1939, in Sarasota County. The defendant below was duly arraigned and entered a plea of not guilty; was placed upon trial and by a jury of said county convicted of the crime of manslaughter. A motion for a new trial was made and by the lower court denied and the trial court sentenced the defendant to serve a period of fifteen years at hard labor in the State Prison. From this judgment of conviction an appeal has been perfected to this Court and several assignments made for a reversal thereof.

Counsel for the defendant below filed a motion to quash the indictment on the grounds: (a) the indictment was vague, uncertain and indefinite; (b) the indictment fails to follow the form prescribed by the Criminal Code; (c) the indictment fails to describe the pistol with sufficient ac-

curacy. The lower court entered an order denying the said motion to quash and this adverse ruling is assigned as error in this Court. Section 279 of Chapter 19554, Acts of 1939, Laws of Florida, commonly referred to as the Criminal Code, prescribes analogous forms of indictments or informations charging the crime of murder in the second degree. It is our conclusion that the essential legal elements appear in the indictment sufficient to sustain the order of the lower court. See Wolf v. State, 72 Fla. 572, 73 So. 740; Sallas v. State, 98 Fla. 464, 124 So. 27.

The second question is, viz.:

"Was it error for the trial court to allow a duly qualified physician and surgeon to testify that the amount of a drug administered to the deceased was not sufficient to affect the mental condition of the deceased prior to her death, when the doctor's testimony was to the effect that he had prescribed a certain amount of the drug, that the hospital record showed that only the prescribed amount had been administered to the deceased, and that the doctor saw the deceased and talked to her at the time of her dying declaration shortly before her death and had an opportunity to and did observe her condition at that time?"

The record shows that Mary Lee Covington sustained a pistol wound shortly after midnight while in her bedroom with the defendant. She was taken to a hospital and operated on and the attending physician was of the opinion that the wound was fatal, and after the operation she grew gradually worse and died around 5:30 P. M. It was necessary to administer morphine and earlier in the day the deceased made conflicting statements as to who shot her, but shortly prior to her death she stated that death was imminent and recovery impossible and while in this condition she stated that the defendant, her husband, inflicted the fatal

wound. It was contended that the admission of this testimony was erroneous because the deceased was under the influence of morphine and thereby mentally incapacitated when she stated the defendant, her husband, shot her. Dr. Patterson was the attending physician and gave the challenged testimony. Counsel relies on the case of Southern Utilities Co. v. Murdock, 99 Fla. 1086, 128 So. 430. It was the physician's opinion that the amount of morphine administered did not affect the mental process of the deceased at the time she gave the challenged testimony.

It is a mixed question of law and fact to be determined by the trial court prior to the admission into evidence of a dying declaration. It is fundamental that the State must show that the decedent at the time knew that his death was imminent and inevitable. See Morris v. State, 100 Fla. 850, 130 So. 582. Any expressions of one mortally wounded at the time of making an alleged dying declaration tending to show that he then believed death was imminent are admissible for the purpose of determining whether the declaration then made and offered in evidence was in fact a dying declaration. See Clemmons v. State, 43 Fla. 200, 30 So. 699. There is in the record testimony to show that the decedent "abandoned hope of recovery;" that death was imminent; "that she could not get well;" and later she died. She stated that her husband, the defendant, shot her. While it is true that the facts surrounding the decedent could have been more elaborately detailed or developed by the State prior to the introduction of the testimony of the dying declaration, we think the same is legally sufficient to withstand the assault made thereon. See Anderson v. State, 133 Fla. 63, 182 So. 643; Handley v. State, 125 Fla. 632, 170 So. 748; Davis v. State, 137 Fla. 423, 187 So. 783.

Counsel for appellant, at the close of the State's case,

moved the Court for an order directing the jury to find a verdict of not guilty in behalf of defendant on the ground that the State of Florida had failed to adduce sufficient testimony upon which a verdict in behalf of the State of Florida could rest; or, in other words, that the evidence offered was legally insufficient to support a verdict for the State. The lower court promptly entered an order denying or overruling the said motion and this adverse ruling is assigned as reversible error in this Court. It is unnecessary and no useful purpose could be served by a discussion of the testimony appearing in the record, the legal sufficiency of which is challenged by the motion. The evidence has been carefully read and considered, and we think the ruling of the lower court was eminently correct in submitting the issue to the jury. See Holland v. State, 129 Fla. 363, 176 So. 169; Victor v. State, 141 Fla. 508, 193 So. 762.

The next question posed is, viz.:

"Should the trial court have allowed testimony of two defense witnesses relative to an experiment to go to the jury when that testimony was such as to attempt to impeach certain State witnesses by means of experiments when it appeared from the evidence of the two defense witnesses that the experiments were made some eight months after the crime was committed and the conditions and surroundings at the time of the experiments were not shown to be similar to conditions and surroundings at the time of the homicide?"

The record shows that the defendant offered the testimony of two witnesses who had been to the scene of the homicide and remained there for some time and observed the *locus in quo* and were ready to testify that much of the testimony offered on the part of the State could not have occurred because of physical conditions appearing about the scene of

the shooting. One witness offered by the State testified to having heard loud talking in the room occupied by the deceased and the defendant, and through a crack in the wall saw the flash of the fire of the gun that wounded the deceased. It was the theory of the defendant that such a condition could not exist. It was further contended that some of the State witnesses could not have heard conversations occurring between the deceased and defendant shortly prior to the shooting and that the witnesses offered would, after making examinations and experiments about the property, give testimony contradictory to that of the State.

The State objected to the evidence on the theory that the conditions were different and the experiments dissimilar and not analogous. We are inclined to the view that there is merit to the objections and there was no error on the part of the lower court. See Lawrence v. State, 45 Fla. 42, 34 So. 87; Spires v. State, 50 Fla. 121, 39 So. 181, 7 Ann. Cas. 214; Reid v. State, 68 Fla. 105, 66 So. 725.

We have carefully examined each ground of the motion for a new trial, inclusive of the affidavit of counsel in support thereof to the effect that one of the jurors had made conflicting statements about certain duties performed by him at the time of the homicide. We do not think the lower court erred in overruling and denying defendant's motion for a new trial.

It is contended that the verdict of the jury is fatally defective because the words "Covington" and "manslaughter" are each erroneously spelled. While the verdict discloses an error in spelling the word "manslaughter," it cannot be said that the verdict is fatally defective and a new trial should be granted. The intention and meaning of the jury by its verdict can easily be determined. See Blackwell v. State, 101 Fla. 997, 132 So. 468; Yarborough v.

State, 94 Fla. 143, 114 So. 237. Bad spelling or faulty grammar will not vitiate the verdict of a jury if the intention is clearly manifest from the language employed. See Morris v. State, 54 Fla. 80, 45 So. 456; 14 Ann. Cas. 285; Sawyer v. State, 94 Fla. 60, 113 So. 736.

The deceased was shot around 1:30 A. M. in her home. The pistol ball went through the curtain of the window. Loud talking was heard in the room between the defendant and deceased shortly prior to the shooting. One witness saw the flash of the gun through the wall of her home and stated that it was in the defendant's bedroom. It was defendant's contention that some one on the outside fired the shot. The jury refused to believe the theory or that some of the defendant's "imaginary" enemies shot her. The jury, under our system, had a right to discard or disbelieve this testimony. It is true that the State failed to establish a motive for the shooting, but the verdict of manslaughter removed this element from our consideration. It is our conclusion that the appellant received a fair and impartial trial in the lower court and that justice was awarded as contemplated by Section 4 of the Declaration of rights of the Constitution of Florida. There is no error in the record and the judgment accordingly is hereby affirmed.

Affirmed.

TERRELL, C. J., WHITFIELD, BROWN and CHAPMAN, J. J., concur.

### ON PETITION FOR REHEARING

PER CURIAM:—On petition for rehearing several assignments considered by the Court in its original opinion have been brought to the Court's attention. We carefully considered the conflicts appearing in the testimony of the deceased as to the identity of the person inflicting the mortal

wound; likewise the experiments offered in evidence by counsel for the defendant for the purpose of contradicting the State's testimony. The "imaginary" enemies of the defendant and the proceeds of a policy of insurance all have been weighed and duly considered.

The petition for rehearing fails to conform to the rule of this Court controlling petitions for rehearing. The several items appearing in the petition for rehearing were weighed and duly considered by the Court in the original opinion.

The petition for rehearing is hereby denied.

BROWN, C. J., WHITFIELD, TERRELL and CHAPMAN, J. J., concur.