**OTIS E. HIGGINBOTHAM and LESTER HIGGINBOTHAM v. STATE OF FLORIDA.**

19 So. (2nd) 829                                          June Term, 1944
November 28, 1944                                          Division A
Rehearing denied December 22, 1944

*Waybright & Waybright* and *P. Guy Crews,* for appellants.

*J. Tom Watson,* Attorney General, *John C. Wynn,* Assistant Attorney General, and *Bourke Floyd,* Special Assistant Attorney General, for appellee.

CHAPMAN, J.:

The appellants, Otis E. Higginbotham and Lester Higginbotham, were indicted for the crime of murder in the first degree by a grand jury of Duval County, Florida. The indictment charged that Otis E. Higginbotham shot Joel M. Hall, Jr., on December 5, 1943, in Duval County and Lester Higginbotham at the time was present aiding, procuring and counseling Otis E. Higginbotham in the commission of the crime. They were arraigned and plead not guilty and then placed upon trial and convicted of the crime of murder in the second degree, and each sentenced to serve a period of thirty years at hard labor in the State prison. They have perfected an appeal here.

Admitted into evidence for the consideration of the jury over seasonable and competent objections of appellants' counsel was a dying declaration of the deceased, Joel M. Hall, Jr., made to Charles W. Callahan. The statement was made by the deceased to Mr. Callahan a short time after he (Hall) was mortally wounded. Hall told Callahan that he was dying. He said, "I want you to have my dog and gun." "I just can't stand it, I just can't stand it." With reference to insurance the deceased said: " 'I have got this policy but we haven't got it yet'. . . 'I want you to look after my wife and baby.' . . . I said, 'Joel you are going to recover; it is not so bad; let's not look at the dark side; let us hope there is a chance.' The wounded man replied, 'C. W., there is no chance'." Callahan testified that the late Mr. Hall had no

hope of recovery at the time he told of the details of his fight with the Higginbothams.

Numerous objections were made to the introduction of the dying declaration of the late Mr. Hall based on the above showing. Authorities are cited to sustain the objections as made. We think the rulings of the trial court are easily sustained by the previous rulings of this Court. See Handley v. State, 125 Fla. 632, 170 So. 748; Anderson v. State, 133 Fla. 63, 182 So. 643; Covington v. State, 145 Fla. 680, 200 So. 531.

It is next contended that the following instruction by the trial court, when considered in the light of all the instructions given, was not only erroneous, but prejudicial to the appellants:

"The Court instructs you further, gentlemen, that the testimony of an accomplice is competent evidence, and the credibility of such accomplice is for the jury to pass on as they do upon any other witness; but the testimony of an accomplice must be received with great caution, but if the testimony carries conviction and the jury is convinced beyond and to the exclusion of every reasonable doubt of its truth, they should give it the same weight as that of any other witness."

Counsel for appellants point out that the challenged instruction was not authorized by the charge made by the indictment; or by the defense of the appellants when on trial, or by developments of any phase of the controversy during the trial. We observe a great deal in the record to sustain appellants' contention. It was not made to appear that an accomplice testified or such accomplice offered as a witness during the progress of the trial. Speculative arguments are made to establish prejudicial error and its alleged effect on the jury flowing from this isolated instruction. The cited authorities have been carefully examined.

The applicability of the challenged instruction is hardly sustained by the record, but are we justified in adopting the reasons offered for holding the charge prejudicial? It is a recognized rule that a single instruction cannot be considered alone but must be considered in light of all other instructions bearing upon the same subject, and if, when so considered,

the law appears to have been fairly presented to the jury, the assignment on the instruction must fail. See Holland v. State, 129 Fla. 363, 176 So. 169; Haddock v. State, 129 Fla. 701, 176 So. 782. Our Criminal Code provides that no judgment shall be reversed unless the appellate court, after an examination of all the appeal papers, is of the opinion that error was committed which injuriously affected the substantial rights of the appellant. See Section 924.33, Fla. Stats. 1941 (F.S.A.).

The evidence shows that the appellants (defendants below) went into the woods where the deceased and a companion were hunting quail some 300 feet distance from the road. The appellants were traveling the road in a school bus. Otis Higginbotham was aggrieved because a shot fired by the deceased or his companion at a quail accidentally struck him in the face. Otis Higginbotham had a pistol and, accompanied by his brother, Lester Higginbotham, attempted an arrest of the deceased and his companion. A fight ensued in which Hall was mortally wounded. The appellants relied upon the law of self defense during the trial. We are unable to find in the entire record any testimony to sustain the contention that the deceased or his companion were the aggressors in the difficulty. It is true that Otis Higginbotham claimed he was hit by a shot fired by the bird hunters some 300 feet away. This claim rested largely upon the testimony of the Higginbothams and members of the two families. The State adduced a witness who had examined the bus shortly after the shooting for bird shot imprints but was met by the technical objection that it had not been shown that the bus was then in the same condition as when the shooting occurred and the trial court sustained the objection.

The testimony adduced did not call for or require an instruction on the law of an accomplice as given by the trial court. It did not affect the legal or substantial rights of the appellants. It may be considered as surplusage and disregarded. See Kelly v. State, 145 Fla. 491, 199 So. 764; Smith v. State, 129 Fla. 755, 176 So. 781; Williams v. State, 46 Fla. 80, 35 So. 335; Section 54.23 Fla. Stats. 1941 (F.S.A.).

Counsel for appellants pose here for adjudication the

question viz: Was it reversible error for the State Attorney to remark to the jury that the defendants were "self-confessed criminals," that they were "bad Higginbothams," that the defendants were mad because the deceased was "hunting birds in their domain," "that we all know that the dying written declaration was not signed or assented to" without any evidence to warrant the same and to say in the presence of the jury to defendants' attorney when he objected to the argument, "Mr. Waybright, do you want my keys to play with," and generally to make an inflammatory and factually incorrect address to the jury?

It is settled law that it is the duty of a trial judge, whether requested or not, to check improper remarks of counsel to the jury and to seek by proper instructions to the jury to remove any prejudicial effect they may be calculated to have against the opposite party. A verdict will not be set aside by an appellate court because of such remarks or because of any omission of the judge to perform his duty in the matter, unless objections be made at the time of their utterances. If the improper remarks are of such character that neither rebuke nor retraction can remove or destroy the influence thereof, then a new trial should be awarded. See Akin v. State, 86 Fla. 564, 98 So. 609; Washington v. State, 86 Fla. 533, 98 So. 605; Henderson v. State, 94 Fla. 318, 113 So. 689. The misconduct of a prosecuting attorney is made a ground for a new trial under the Criminal Code. See Section 920.05, Fla. Stats. 1941 (F.S.A.).

This question rests on language used or employed by the Honorable Lester W. Jennings, Assistant State Attorney, when addressing the jury impanelled to try the cause. Copied into the record is his speech comprising some 27 pages. The address of the Honorable Inman Crutchfield, State Attorney, comprised 9 pages. Each of the appelllants were adjudged insolvent by the trial court as authorized by Sections 924.17 and 939.15, Fla. Stats. 1941 (F.S.A.) We are not acquainted with any statute or rule of law, nor do citations for such appear in the briefs, that require the costs to be taxed against a county for reporting and transcribing the notes of speeches delivered by attorneys to a jury in criminal cases and have

a transcript thereof certified to this Court under an insolvency order. If a solvent defendant desires such luxuries, then the taxpayers of a county are not in a position to complain. This question is without merit.

The fourth question propounded is largely upon the detailed testimony of all the witnesses concerning the altercation between the parties. We observe disputes and conflicts in this testimony which present a jury question. We think there is ample evidence in the record to sustain the verdict and judgment of the lower court. Presented on this record is the testimony of a brutal and unprovoked murder. The accidental striking of one of the appellants by a single bird shot fired by the deceased or his companion at an approximate distance of 300 feet was the beginning of the altercation. The appellants, armed with a pistol, thought it their duty under the law to take these men before a justice of the peace in the neighborhood. Inferences from the evidence are to the effect that from the inception of the trouble the appellants were arrogant, haughty, overbearing, and domineering. They sheltered themselves during the trial under the law of self defense, but their victim was shot in the back. They should be grateful to able and resourceful counsel. Reversible error has not been shown on this record.

Affirmed.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.