154 So.2d 910 (1963)
Joseph A. PEEL, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 2711.
District Court of Appeal of Florida. Second District.
May 22, 1963.
Rehearing Denied July 8, 1963.
*911 Harry W. Fogle, of Fogle, Wilson & Shingler, St. Petersburg, for appellant.
Richard W. Ervin, Atty. Gen., Tallahassee, Robert R. Crittenden, Asst. Atty. Gen., Lakeland, Phil D. O'Connell, State Atty., West Palm Beach, Eugene P. Spellman, Miami, for appellee.
OGILVIE, CLAUDE, Associate Judge.
This appeal involves one of two cases brought against Joseph A. Peel, Jr. by reason of his alleged participation in the murders of Judge Curtis E. Chillingworth and wife Marjorie M. Chillingworth in Palm Beach County on June 15, 1955. On his indictment as accessory before the fact of first degree murder of Marjorie M. Chillingworth, the defendant was convicted after entering a plea of nolo contendere and was sentenced to life imprisonment which was affirmed by this court. Peel v. State, Fla.App. 1963, 150 So.2d 281.
In the instant case Joseph A. Peel, Jr. was indicted in Palm Beach County, tried in St. Lucie County after change of venue granted, and was convicted with recommendation of mercy of the crime of accessory before the fact to first degree murder of Judge Curtis E. Chillingworth. Specifically the indictment, filed November 23, 1960, charged that Floyd A. Holzapfel effected the death of Curtis E. Chillingworth by drowning him in Palm Beach County, Florida on June 15, 1955 and that, at divers times between May 1st, 1955 and June 15, 1955, defendant Joseph A. Peel, Jr. unlawfully counseled, hired, procured and commanded the said Floyd A. Holzapfel to do and commit the aforesaid felony. The defendant's conviction under said indictment is the subject of this appeal. There are 51 assignments of error, but by written brief and oral argument the defendant raises 11 questions to be determined on appeal.
We pause here to note that the able attorney who represents the appellant in this appeal, did not represent him in the trial below.
Defendant's motion for bill of particulars was granted with respect to the names and addresses of all the witnesses which the State would call to testify in proof of the allegations contained in the indictment; but the motion was denied with respect to requests for "the specific dates between May 1, 1955 and June 15, 1955, when appellant counseled, hired, procured and commanded Holzapfel to murder Judge Chillingworth"; "the hours of the day on the dates which appellant counseled, etc., Holzapfel"; "the place of counseling, etc."; *912 "the particular way or manner appellant counseled * * * the murder"; "the place and time of the actual murder"; "by what means the victim was actually murdered"; and for specification of "facts showing that the murder was not the separate individual act of the principal, Holzapfel".
An examination of the testimony and evidence presented at the trial clearly discloses that defendant Peel was thoroughly informed of the charge against him contained in the indictment. We agree with appellant that "* * * the rule of law in Florida is that a bill of particulars is never required in a criminal case in Florida except in exceptional cases where the denial of same constitutes an abuse of judicial discretion * * *". A comparison and consideration of the cases cited by the State and defense leads to the conclusion that no abuse of judicial discretion and no reversible error are to be found in the trial court's partial denial of the motion for a bill of particulars.
Two of the cases cited by defendant on this point, Thomas v. State, 1917, 74 Fla. 200, 76 So. 780 and Winslow v. State, Fla. 1949, 45 So.2d 339, are not applicable here because of the element of surprise occurring in those cases in the difference between the probata and the allegata  the State's proof of the date of the crime differing from the date alleged in the information. In the third case, Findley v. State, 1936, 124 Fla. 447, 168 So. 544, the information charged the accused with burglary of a storehouse of a certain corporation, and it was held reversible error to deny a bill of particulars specifying which of several storehouses owned by said corporation was the situs of the crime.
In the State's citation of Craig v. State, 1928, 95 Fla. 374, 116 So. 272, we find closer analogy to the case at bar. The Florida Supreme Court in that case summarized the verbiage of the indictment as follows:
"The Plaintiff in error was indicted for embezzlement of $162.22 of the goods and chattels of The Atlantic Coast Line Railroad Company. The money was described as `currency of the United States of America, a better description of which is to the grand jurors unknown.' The date of the commission of the offense was alleged as being on the 26th day of November, 1925, in Volusia County, Fla., `and on divers other days and dates after said date and before the filing of this indictment.' The indictment was filed November 17, 1926." (emphasis supplied)
In disposing of appellant's argument that the trial court committed reversible error in denying his motion for bill of particulars, the Court announced the following rules:
"* * * If the indictment is sufficiently full in its allegations of fact constituting the crime charged to enable a person to plead to it, the greater part of the reason for allowing particulars does not exist. * * *
"* * * The application was not so much for a bill of particulars as for a detailed statement of the evidence by which the State proposed to prove its case.

* * * * * *
"* * * If the defendant was advised of the nature and cause of the accusation against him and had notice of the dates on which the acts constituting the offense were committed, there was no necessity for a bill of particulars. All of this information was given in the indictment. * * *" (emphasis supplied.)
Furthermore, inasmuch as appellant failed to indicate how he was harmed in his defense by the trial court's partial denial of his motion for bill of particulars, he is in no position to complain to this Court. Jarrell v. State, 1939, 135 Fla. 736, 185 So. 873, 879.
The next two points presented by appellant in his brief and on oral argument *913 concern his right to discovery and inspection and his request to copy certain pre-trial tape recordings secretly made by investigating law-enforcement officers under the direction and supervision of the State Attorney  some tapes recording the voice of defendant Peel and other tapes recording the voice of the principal Holzapfel, each respectively with third persons who later testified at the trial. During December, 1960 and January, 1961 defendant Peel filed several such motions for discovery, inspection and copying. Each of these were denied, except with respect to witnesses the State would call at the trial, on the ground that the appellant had not up to that time shown that he was entitled to the tape-recordings. The court expressly provided that should it subsequently appear that appellant was entitled to such discovery, etc., the court would then entertain appellant's motions to that effect.
March 7 through March 30, 1961 trial was had. During the course of the trial, on March 13, 1961, appellant again moved for leave to inspect and copy the aforesaid tape recordings. Arguments on the motion were heard by the court and the tape recordings were played outside the presence of the jury. The court ruled that it would hear the tapes in the presence of counsel and would determine the materiality and the relevancy of anything on the tapes in question to the issue being tried. Some four and a fraction days of the trial were consumed in hearing the tape recordings played, all outside the presence of the jury. During this period there was much confusion and argument of counsel, at the conclusion of which the court ruled that the recordings were inadmissible in evidence. Neither the State nor the defense offered any part of the tape recordings in evidence, and at no time during any of the proceedings below did the appellant or the State use or request any tape recording for impeachment purposes. The defendant failed to properly object to the procedure he complains of as to discovery pertaining to the tape recordings and he failed to demonstrate how any of the rulings or procedures in the trial court injuriously affected his substantial rights. Fla. Stat. § 924.33 F.S.A. All parties whose conversations appeared on the several tapes were under subpoena as witnesses and in attendance at the trial. Furthermore, from the extensive record covering these tapes, it appears that the appellant was not entitled to their production either under Fla. Stat. § 909.18, F.S.A. or under a subpoena duces tecum.
Fla. Stat. § 909.18, supra, provides that when a crime has been committed and the evidence of the State relates to certain enumerated items of tangible personalty, the trial court may order that the prosecution furnish said items for inspection, copying or photographing by the accused. However, the purview of this section is limited. In Williams v. State, 1940, 143 Fla. 826, 197 So. 562, the Supreme Court of Florida held that the accused was not entitled to the inspection of his own written confession. Subsequently the Supreme Court held, in McAden v. State, 1945, 155 Fla. 523, 21 So.2d 33, 35, that an accused is not entitled to examine the transcript of the testimony of prosecuting witnesses made prior to trial where not given before a grand jury or committing magistrate. Furthermore, in the recent case of Raulerson v. State, Fla. 1958, 102 So.2d 281, 283, the Supreme Court reaffirmed its position in Williams v. State and McAden v. State, supra, and in Ezzell v. State, Fla. 1956, 88 So.2d 280, 281.
In view of the above pronouncements it cannot be said that the appellant was entitled to inspect, copy, etc., the said tape recordings, which could not be considered substantive evidence but were clearly the work product of the prosecuting attorney.
The Florida Supreme Court in McIntosh v. State, 1939, 139 Fla. 863, 192 So. 183, 185, held in clear and unequivocal language, which has yet to be altered or receded from, that a subpoena duces tecum in a criminal prosecution:
"* * * extends only to legal or public records that have been regularly *914 made in due course of legal procedure and as to these, the application must be seasonably made. Not only that but it must be shown that the evidence sought is material and necessary to the defendant's cause. It in no sense reaches notes or evidence taken by the prosecuting officer at his expense and by his private stenographer. These are the private property of the solicitor." (Emphasis supplied.)
Appellant had resided in Palm Beach County from early life until about eighteen months before trial dates, had worked and practiced law there, and until eighteen months before this trial had served as Municipal Judge for a number of years. The record reveals that appellant moved his residence from Palm Beach County some eighteen months before the trial; and the record further reveals that he spent much of that eighteen-month period away from his Eau Gallie residence, visiting and transacting business in Orlando, Daytona Beach, Macon, Georgia, and Chattanooga, Tennessee.
Appellant claims error in the lower court permitting over his objection some six witnesses to testify, basing their testimony on their residence and knowledge of appellant's reputation for truth and veracity in Palm Beach County which was related to appellant's residence eighteen months prior to the trial date. The witnesses testified that they were acquainted with appellant during the time appellant lived and practiced law in Palm Beach County, some testifying that they had actual business dealings with him. One witness, a member of the bar for forty-five years, testified that he had known appellant all of appellant's life. We see no error on this point. Alford v. State, 1904, 47 Fla. 1, 36 So. 436.
Next, the appellant argues that the trial court erred in not permitting him to cross-examine the witnesses Floyd Holzapfel and George Bobby Lincoln concerning the facts of the "Lew Gene Harvey murder", which occurred in Palm Beach County some three years after the murder of the Chillingworths.
The prosecuting attorney never questioned the witness Holzapfel concerning the "Lew Gene Harvey murder". However, during his "first" cross-examination of Holzapfel, appellant sought to question Holzapfel concerning said Harvey murder. In the absence of the jury, through his proffer, appellant had Holzapfel state that he was then under a grand jury indictment for the murder of one Lew Gene Harvey but had not yet been arraigned under it. During such proffer appellant asked Holzapfel whether he had made a statement regarding the "burial" of Harvey, to which he replied that he had not made any such statement. The trial court ruled that appellant's proffer be denied, holding that "* * * any interrogation that would involve another pending offense, separate and pending offense, would be immaterial and irrelevant to this cause, and would be improper * * *".
Subsequently, during his "last" cross-examination of Holzapfel, appellant again made a proffer, which was admitted in evidence before the jury, to the effect that there was pending in Palm Beach County against Holzapfel an indictment for the murder of Harvey; that Holzapfel had not yet entered a plea thereto; that the indictment against appellant in the instant case and against Holzapfel in the Harvey case were returned by the same grand jury in Palm Beach County.
George Bobby Lincoln, Holzapfel's accomplice on the fatal night of June 15, 1955, testified at the trial of the case at bar as a witness for the State and was asked only one question concerning the "Lew Gene Harvey murder",  whether he, Lincoln, had been granted immunity in the Chillingworth cases and also in the Lew Gene Harvey case  whereupon Lincoln testified that he had been granted immunity in the three cases mentioned on the ground that he tell the truth. This was the only question ever asked by the prosecution of Lincoln conconcerning the Harvey murder, viz:
*915 We find no error in the trial court overruling questions propounded by the defense in the instant case to the witness Lincoln concerning the Harvey murder, viz.:
"Isn't Lew Gene Harvey one of the persons who was named as a co-conspirator but not a defendant in a case with you in Jacksonville, Fla.?"
* * * * * *
"Who killed him?" [referring to Harvey]
"How did he [Holzapfel] kill him?"
"Isn't it a fact, Mr. Witness, that while Lew Gene Harvey was manacled with handcuffs, behind his back, and laying on the ground beside the Canal, and was wrapped in chains, that you, that Floyd A. Holzapfel in your presence and on your behalf, shot Lew Gene Harvey in the head?"
"If, as a matter of fact, Lew Gene Harvey was not wrapped in chains in your presence * * *."
"Could I ask you the date when this occurred." [the Harvey murder]
* * * * * *
"And in a matter of three days, Lew Gene Harvey had come to the surface, had he not?"
Impeachment seems to have been the purpose of defendant's counsel in questioning Holzapfel and Lincoln concerning the Harvey murder. The trial court admitted in evidence the proffer of Holzapfel along this line, questioning him about his indictment for the Harvey murder, what action had been taken to bring him to trial, etc. But defense counsel only sought to question Lincoln concerning the gruesome details of facts surrounding the murder of Harvey. He testified that he had been granted immunity in the Harvey murder.
In Lockwood v. State, Fla.App. 1958, 107 So.2d 770, 772, it is said:
"Normally a witness, whether a party to the particular cause or not, may not be impeached as to a collateral matter brought out on cross-examination. Stewart v. State, 1900, 42 Fla. 591, 28 So. 815; Stinson v. State, 1918, 76 Fla. 421, 80 So. 506. Neither may specific acts which reflect badly upon a party's morals or character be shown by extrinsic testimony. Cornelius v. State, Fla. 1950, 49 So.2d 332. * * *"
The Supreme Court of Florida, in the case of Watson v. Campbell, Fla. 1951, 55 So.2d 540, said:
"(1, 2) This Court is committed to the doctrine that evidence of another and distinct crime committed by defendant, in no way connected by circumstances with the one for which he is being tried, is inadmissible. * * * The general rule is that evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness. Roberson et al. v. State, 40 Fla. 509, 24 So. 474; Nelson v. State, 99 Fla. 1032, 128 So. 1; Squires v. State, 42 Fla. 251, 27 So. 864."
Appellant further contends that the judgment should be reversed because of prejudicial and unfounded statements made by the prosecuting attorneys in their arguments to the jury. Much emphasis is placed by appellant upon the statements of counsel for the State that appellant when testifying in his own behalf "took the Fifth Amendment". The trial record discloses that appellant's counsel failed to object to such argument when made in the trial court and to obtain a ruling of the trial judge thereon. It may well have been that said remarks concerning the Fifth Amendment were permissible argument as a reasonable inference drawn from the whole of appellant's own testimony and in answer to a portion of defense counsel's argument; but admitting the same to have been improper, we are committed to the rule that a verdict will not be set aside by an appellate court because of such remarks unless objection is made at the time of their *916 utterance and a ruling of the court secured thereon. See Fouts v. State, 1931, 101 Fla. 1248, 133 So. 81; Livingston v. State, 1939, 140 Fla. 749, 192 So. 327; Higginbotham v. State, 1944, 155 Fla. 274, 19 So.2d 829; and Tillman v. State, Fla. 1950, 44 So.2d 644. We do not conclude that such remarks were so obviously prejudicial and of such character that neither rebuke nor retraction could have removed or destroyed their influence; nor can appellant find comfort under the provisions of Fla. Stat. § 918.09, F.S.A., which prohibits comment upon the failure of an accused to testify in his own behalf. Once a defendant elects to testify, as did the appellant herein, his testimony is to be weighed the same as any other witness, and argument directed to what he says and does not say is justified. Odom v. State, Fla. 1959, 109 So.2d 163.
Error also is assigned upon the refusal of the trial judge to charge the jury that the defendant below had not "taken the Fifth Amendment". When appellant's testimony given in his own behalf on direct and cross-examination is studied, such requested instruction, if given, could well have placed the trial judge in the position of commenting to the jury upon the evidence and credibility of the accused as a witness. Furthermore, appellant's counsel did not comply with the requirements of Fla. Stat. § 918.10(4) F.S.A., which provides that "No party may assign as error or grounds of appeal, the giving or the failure to give an instruction, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects, and the grounds of his objection." See Febre v. State, 1947, 158 Fla. 853, 30 So.2d 367; Miller v. State, Fla.App. 1958, 102 So.2d 737; Jackson v. State, Fla.App. 1958, 107 So.2d 247; and Williams v. State, Fla.App. 1959, 109 So.2d 379.
Additional error is assigned by appellant upon the ground that the lower court erred in refusing to have appellant's testimony read to the jurors after they had commenced their deliberation upon the jury's inquiry as to whether or not appellant had "taken the Fifth Amendment". The record in this case does not support such assignment of error.
One of the first questions propounded to the State's witness Lincoln on direct examination was whether he had been granted immunity for murder in three cases, the two Chillingworth cases and the Lew Gene Harvey case; and he answered that he had been granted immunity in the three cases. There was no objection on the part of the defense to such question and answer, and there was no motion to strike them from the record. Furthermore, the second question propounded to the witness Lincoln on cross-examination by the defense was the same identical question of whether he had been granted immunity for the three murder cases; and his answer was the same as given before. It seems to us here that the appellant-defendant was pleased to suggest to the jury that no weight and credibility could be attached to testimony coming from such a character. It would seem that the fact that one of the State's chief witnesses had been granted immunity could only result in the sympathy of the jury for the appellant and in the jury's doubt as to the weight and credibility of the witness' whole testimony.
Appellant argues that the state attorney attempted to grant the immunity without legal authority, and that the testimony was allowed to go to the jury improperly. We cannot agree. The record discloses that the witness had been granted immunity for his full disclosure of the facts surrounding the Chillingworth murders. See Ingram v. Prescott, 1933, 111 Fla. 320, 149 So. 369; Wilson v. State, 1938, 134 Fla. 390, 184 So. 31; Cortes v. State, 1938, 135 Fla. 589, 185 So. 323; Henderson v. State, 1938, 135 Fla. 548, 185 So. 625, 120 A.L.R. 742; and State ex rel. Benemovsky v. Sullivan, Fla. 1948, 37 So.2d 907. The granting of immunity to the witness Lincoln did not render him incompetent to testify in the instant case, but *917 went only to the weight and credibility to be attached to his testimony.
By his eleventh and final question, appellant asks for a reversal upon additional alleged improper remarks of the State Attorney and the Assistant State Attorney in their arguments to the jury. Some seventy odd remarks or comments are cited, but in most instances appellant voiced no objection to said utterances. We have considered the remarks and comments to which objection was made and find that no reversible error has been shown.
Affirmed.
ALLEN, Acting C.J., and WHITE, J., concur.