FRED OSIUS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion filed July 24, 1928.

*Shutts & Bowem, John S. Benz,* and *Bart A. Riley,* all of Miami, for Plaintiff in Error.

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant for the State.

Strum. J.—Plaintiff in error, hereinafter called the defendant, takes writ of error to a judgment convicting him of manslaughter. The charge is based upon the alleged

culpable negligence of defendant in driving an automobile along the Miami-Miami Beach causeway recklessly and at a rate of speed greater than was reasonable and proper under the circumstances, resulting in the automobile being driven by the defendant into Biscayne Bay, two of the passengers therein being drowned, for the death of one of whom defendant was on trial.

The transcript discloses the following procedure at the close of the trial:

"Whereupon, at 4:05 o'clock P. M., the jury retired to consider their verdict, and at 4:38 o'clock P. M. returned to the court room and were polled.

"The Court: Have you arrived at a verdict, gentlemen?

"Foreman Cohen: Your Honor, we have discussed this case somewhat and we came to the conclusion that the Court has not given us ample instructions in his charge. We would like to know as to the degree of any verdict in case there is a conviction. We would like to know the various degrees of the verdict to convict, and unless we have it we can not thoroughly arrive at the verdict.

"The Court: Well, there are no degrees of manslaughter, and that is all that the defendant is charged with here. He is either guilty of manslaughter, because there are no degrees. If you find him guilty your verdict will be: We, the jury, find the defendant guilty of manslaughter as charged in count 1. If you find him not guilty, of course, your verdict will be: We the jury find the defendant not guilty, there not being any degrees of manslaughter. Either just manslaughter or nothing, that is all.

"Foreman Cohen: Your Honor, is there any recommendation following the verdict?

"The Court: If the jury desire to, after rendering their verdict they can come to me and express their desires about that, but it would not be proper to put it in the verdict; or you can put it in the verdict if you desire to.

"Foreman Cohen: Have I the permission of the Court to inquire to what extent any recommendation would affect a verdict? For instance, if a verdict is rendered with a recommendation for mercy what effect would it have on the verdict.

"The Court: It would not have any effect on the verdict. The statute provides that in all criminal cases the jury, in addition to the verdict of guilty of any offense, may recommend the accused to the mercy of the Court or to executive clemency, and such recommendation shall not qualify the verdict except in capital cases. In all cases the Court shall award the sentence and fix the punishment or penalty prescribed by law.

"Foreman Cohen: Now, your Honor, the jurors would further wish to know what the penalty is in case of a verdict of guilty.

"The Court: It ranges anywhere from a fine to a penitentiary offense. It is left to the judgment of the Court for the imposition of the sentence.

"Foreman Cohen (addressing other jurors): Is that all?"

(Affirmative replies.)

"Foreman Cohen: Thank you, your Honor."

To all of which proceedings the defendant, by his attorney did then and there except.

Whereupon, the jury retired to further consider their verdict, returned to the court room at 5:10 P. M., and were polled.

"The Court: Have you arrived at a verdict, gentlemen?

"Foreman Cohen: We have, your Honor.

"The Court: Pass it to the clerk.

"The Court: Read the verdict.

"Mr. Galbraith (Deputy Clerk): 'We, the jury, find the defendant guilty of manslaughter as charged in count 1 of the information with the recommendation of extreme mercy, so say we all.' Isadore Cohen, Foreman."

Defendant contends that the procedure just quoted constitutes a harmful error in that the language used by the trial judge tended to improperly influence and coerce the jury in arriving at their verdict of guilty.

In Garner v. State, 28 Fla. 113, 161, 9 So. R. 835, 29 A. L. R. 232, after prescribing the proper practice to be followed by trial judges in charging the jury with reference to our statute permitting a recommendation to mercy in criminal cases (Sec. 6095, 6096, Rev. Gen. Stats. 1920), this court further said: "We would not hesitate to reverse a case where it appeared either from the charge, in so far as it bore on this point, or from such part considered with others, that the jury 'might have been' influenced in the use of their discretion, by something falling from the judge." See also Lovett v. State, 30 Fla. 142, 11 So. R. 550; Newton v. State, 21 Fla. 101; Lester v. State, 37 Fla. 382; So. R. 232.

Though doubtless not so intended, and though the trial judge was unquestionably actuated only by a desire to aid the jury in their deliberations as far as was proper, the instruction by the trial judge that "if the jury desire to, after rendering their verdict they can come to me and express their 'desires' about" the punishment strongly tends

to influence the verdict of the jury in the particular circumstances under which the charge was given—at a critical time during the deliberations of the jury when they were unable to reach a verdict and were in the state of mind indicated by the foreman's remarks. Indeed, that the Court's response to the foreman's questions would be so used is to be inferred from the inquiry. While it is proper to charge the jury that they may recommend the accused to the mercy of the court or to executive clemency, this duty is best performed, as this Court has said in the Garner and Lovett cases, *supra,* by simply stating the terms of the statute to the jury and stating that the making or withholding of the recommendation is a matter which the law has placed entirely in their discretion. And when it is patent, as it is here, that the jury is unable to reach a verdict because of a concern over the penalty, the trial court in order to avoid improperly influencing the jury in the circumstances should make it plain that such a recommendation (in prosecutions other than for murder in the first degree) is not binding upon the court, but in order to be effective must meet with the approval of the trial judge. To omit the latter caution under the circumstances is likely to lead the jury to infer that their recommendation as to punishment will be followed or at least weighed by the court, and thus influence them in reaching a verdict. Especially is this true when the jurors are informed that they may state their ''desires'' to the Court, instead of making a ''recommendation.'' The jury should be given to clearly understand that they have nothing to do with fixing the punishment. The charge here considered is not only faulty in the respect just stated, but it transcends the scope of the statute providing for a recommendation to mercy by the jury. The statute contemplates that any such recommendation shall be made as a part of the verdict, and as a recommendation only. The jury should clearly understand

the latter aspect of the matter. The charge of the trial judge that the jurors might come to him after the verdict and express their ''desires'' as to the punishment infers too strongly an invitation from the Court to treat with them after the verdict upon a question wholly foreign to their function and which should not enter into their deliberations, thus tending to provoke prejudicial indifference to a proper discharge of their duty as jurors. If the jurors receive impression from the Court that their ''desires'' as to punishment after a verdict of guilty will be considered by the Court, or that by the expression of their ''desires'' they may ameliorate the consequences of a conviction, such an impression in a doubtful case will be almost certain to affect the verdict.

Although no promise was made by the Court with respect to leniency, and although the Court further stated that it was the province of the Court to award the sentence and fix the punishment or penalty prescribed by law, the jury might well have understood from the language used by the trial judge and the circumstances under which it was used that their ''desires'' would be weighed in pronouncing judgment, thereby injecting into the deliberations of the jury considerations entirely foreign to the issues, and which might, and probably did in this case, influence the jury in reaching a verdict of guilty.

When the jury returned to the court room and asked for further instruction, it was apparent they were encountering difficulty in reaching a verdict, because they were concerned as to the punishment to follow. The evidence in some of its most essential features was conflicting. Cannon v. State, 107 So. R. 360. The concern of at least some of the jurors as to the degrees of manslaughter; as to whether they could recommend the defendant to mercy; and if so, what the effect thereof would be; and lastly, as to the

possible penalty of a verdict of guilty, plainly indicate a reluctance on the part of at least some of the jurors to convict. Under these circumstances a statement from the Court that the jurors might come to him after the verdict and express their "desires" as to the punishment is very likely to weigh with the jurors in reaching their verdict. After the jury had been out about thirty-three minutes the foreman stated that unless the jury had further instructions it could not "thoroughly arrive at a verdict." After the colloquy between the Court and the foreman hereinabove set out, a verdict was promptly returned. The jury's recommendation to "extreme mercy" indicates that it was found as a result of compromise, and probably because of the jury's expectation that the Court would indulge their recommendation by dealing lightly with the defendant.

Had the trial judge embraced in his original charge to the jury a proposition that the punishment following a verdict of guilty "ranges anywhere from a fine to a penitentiary offense, and that it is left to the judgment of the Court for the imposition of the sentence; but that if the jury desires to, after rendering their verdict they can come to me and express their 'desires' about the punishment," the error in such a charge, particularly in a case where there is sharp conflict in the evidence, would be plain. The remarks of the trial judge here under consideration have the same effect as formal instructions. West v. State, 55 Fla. 200, 46 So. R. 93.

The degree of punishment to be imposed can in no wise affect the weight of the evidence upon which the jury is required to base its judgment. The jury is therefore not concerned with the punishment. See Eggart v. State, 40 Fla. 527, 25 So. R. 144; Abney v. State, (Miss.) 86 So. R. 341; Hogg v. State, (Ala.), 89 So. R. 859. The delibera-

tions of the jury should be confined to the evidence before them, and should be uninfluenced by other considerations or suggestions. The moment their deliberations are tinctured by suggestions or influences other than the evidence, that moment their legitimate and highly prized function is prejudicially impaired. In consequence, their verdict does not rest solely on the evidence. When we consider that the existence of a reasonable doubt entitles a defendant to an acquittal, and that a very slight circumstance may affect that question, the danger of putting before the jury any improper distractions becomes more apparent. In a prosecution for manslaughter, the one issue for the jury is: Is the defendant guilty as charged? Anything, therefore, tending in any appreciable degree to divert the attention of the jury from that issue, or to create in their minds the impression that the Court, to some extent, will assume their responsibility, deprives the verdict of its most essential characteristic, that of independence. State v. Kernan, 135 N. W. R. 362, 40 L. R. A. (N. S.) 239; State v. Kiefer, 91 N. W. R. 1117; 1 Ann. Cas. 268; State v. Gill, 14 S. C. 410; Territory v. Griego, 42 Pac. R. 81; People v. Harris, 43 N. W. R. 1061; People v. Santini, 222 N. Y. S. R. 683; People v. Chartoff, 75 N. Y. S. R. 1088; Miller v. U. S., 37 App. (D. C.) 138; Allerbe v. State (Miss.), 30 So. R. 37; McBean, v. State, 53 N. W. R. 497; DeKelt v. People, 99 Pac. R. 331; 16 C. J. 1090.

To correctly advise the jury as to the maximum and minimum punishment under the charge may not within itself constitute reversible error when it is done as an incident to other charges and it does not appear that the information tended to coerce a verdict of guilty. But where it appears likely that the charge as to the possible punishment, coupled with permission from the trial judge to the jurors to come to him after the verdict and express

their "desires" as to the punishment, may have resulted not merely in harmonizing the views of the jurors upon the facts, but constituted an impelling influence in finding a verdict of guilty upon evidence in which there is sharp conflict, upon the assumption that their desires as to punishment would be taken into consideration, it is harmful error. The circumstances disclosed by the record strongly indicate that such may have been, and probably was, the case in this instance, and under those circumstances a new trial should be granted. The error lies, not in the fact that the trial judge charged the jury upon the punishment, but in the additional language of the judge hereinabove quoted, which tended, under the circumstances stated above, to divert the attention of the jury from the evidence and to induce them to base their verdict upon extraneous considerations. Thought undoubtedly inadvertent on the part of the trial judge, it was harmful error.

Reversed and new trial awarded.

ELLIS, C. J., AND BROWN, J., concur.

WHITFIELD, P. J. AND TERRELL AND BUFORD, J. J., concur in the opinion and judgment.