102 So.2d 281 (1958)
James H. RAULERSON and Fritz H. Clark, Appellants,
v.
The STATE of Florida, Appellee.
Supreme Court of Florida.
April 23, 1958.
*282 John W. Lee, Jacksonville, for James H. Raulerson.
Carlton L. Welch, Jacksonville, for Fritz H. Clark.
Richard W. Ervin, Atty. Gen., David U. Tumin, Asst. Atty. Gen., and William A. Hallowes, 3rd, State Atty., Duval County, Jacksonville, for appellee.
THOMAS, Justice.
The appellants, James H. Raulerson and Fritz H. Clark, together with Duane C. Almas and Gerald R. Noe, were indicted for rape. A severance was granted upon the motions of Duane C. Almas and Gerald R. Noe, and upon the trial of the appellants they were found guilty without any recommendation of mercy and were sentenced to death in the electric chair.
After the indictment was returned, 16 December 1955, the appellants and their accomplices having been meanwhile put under arrest, the appellants, 7 February 1956, filed a motion for a continuance containing the statement that they were "surprised" when the court, on 1 February 1956, granted the motion of Almas for a severance. A similar motion on behalf of Noe had been granted 30 December 1955. Although the severance had been allowed Noe more than a month before, the appellants contended they were hindered in the preparation of their defense because in order to determine the veracity of Noe as well as Almas it would be necessary to investigate the character of these two accomplices "and other witnesses extensively throughout the State of Florida and in other states * * *." At this time the case had been set for trial 27 February *283 1956. We assume that the appellants took this position in anticipation that Noe and Almas would testify for the State.
So a period of more than two months was to expire between the filing of the indictment and the holding of the trial; nearly two months were to elapse between the severance as to Noe and the trial; and nearly 30 days between the last severance, granted to Almas, and the trial.
Although the periods were shorter if computed from the time an attorney for one of the appellants was appointed by the court, still the dates themselves seem to belie the claim of even that appellant that he was so surprised by the court's rulings that his defense was jeopardized. There appears to have been abundant time for the appellants to have informed themselves about their accomplices or at least such a lengthy period that the judge cannot be said to have abused his discretion when he denied their motion. Two circumstances greatly weakened, and now weaken, their position. In the trial court they wished not only to have an investigation of their companions but also of all other witnesses in this and other states. The purpose of the request was so inexplicit there is small wonder it did not appeal to the judge.
It is difficult to recognize the original basis for their motion in the present challenge to the judge's ruling. It is argued in this court that the appellants' defense was unfairly affected by failure to grant the motion because no opportunity was given to acquire evidence about the reputation of the prosecutrix for chastity. Although this intention was by implication encompassed in the representation made to the trial court, one reading the motion made then would hardly have anticipated the basis for it presented now.
We do not find that there was a palpable abuse by the trial judge of the discretion he exercised when he denied the motion and such must be made clearly to appear before a denial of a motion for continuance is overturned by this court. Acree v. State, 153 Fla. 561, 15 So.2d 262. It is "elementary" that a motion for continuance is addressed to the sound discretion of the trial judge. Kitchen v. State, Fla., 89 So.2d 667; Sec. 916.02(2), Florida Statutes 1955, and F.S.A.
Before leaving this subject we must, however, express disagreement with the State's position that the chastity of a prosecuting witness "is completely irrelevant to the charged crime * * *." This may not be stated as an absolute rule for when a person charged with rape relies on the defense of consent of the prosecutrix, testimony of her general reputation for chastity is admissible. Nickels v. State, 90 Fla. 659, 106 So. 479.
The appellants claim that error crept into the trial when the judge denied their motion to require the State "through the State Attorney's Office" to produce for their inspection the transcribed notes of the court reporter recording certain statements made by Almas and Noe, the accomplices who were not on trial. The motion is said to have been based on Sec. 909.18, Florida Statutes 1955, and F.S.A.
Our study of the statute does not bring us to the view that it is authority for the request made by the appellants and we think we have already said so. In Ezzell v. State, Fla., 88 So.2d 280, we alluded to the right of a defendant under the statute to have the State required to produce all its evidence including a transcript of oral confessions and we held that our decisions in Williams v. State, 143 Fla. 826, 197 So. 562, and McAden v. State, 155 Fla. 523, 21 So.2d 33, defeated such an effort. In the latter case it was held that the defendant was not entitled to a transcript of the testimony of State witnesses. We think the rule may be applied to the present situation with the same, if not greater force. Actually the appellants were not primarily seeking a record of the testimony of State witnesses but of statements which, because made by accomplices, would not have been admissible against them even had the accomplices been *284 on trial. Blanco v. State, 150 Fla. 98, 7 So.2d 333. The court reporter, strictly speaking, was not a witness, his name did not appear on the list of witnesses filed by the State and he did not testify at the trial. On the other hand, the names of Almas and Noe did appear and they were, therefore, available for interview by appellants. Mathews v. State, Fla., 44 So.2d 664. Furthermore, during the progress of the trial the State Attorney, after each of these men had testified, tendered to counsel for the appellants the statement each had made and the court in each instance declared a recess, so appellants were given an opporunity to examine the statements in the light of the testimony, presumably so they could chart the course of their cross-examination.
We find no basis for criticism of the judge's treatment of this phase of the case.
Most of appellant-Clark's brief is devoted to a remark of the judge made in the presence of the jury: "All right. I think the testimony is perfectly competent under the two theories: that it is part of the res gestae and then these people have been shown to be all acting in a conspiracy together." The words we have italicized are the ones the appellants charge to have been offensive and prejudicial, and violative of our decisions that a judge errs if he comments on the evidence in the presence of the jury. Typical of these decisions are Leavine v. State, 109 Fla. 447, 147 So. 897, and Seward v. State, Fla., 59 So.2d 529. There can be no doubt of this ruling to which we have consistently adhered, and if the statement is taken out of context, isolated and pondered without regard for what prompted it, the appellants' point would appear well taken. We shall consider whether or not, in context, it had a damaging effect on the defense.
In order to understand the occasion for the statement of the judge we should introduce now some of the circumstances surrounding the commission of the crime as they had been developed up to that time by the prosecuting witness and by the witness then testifying. As we have seen four men were charged with the offense. In one count of the indictment all were alleged to have committed it. In each of the other three counts one defendant was averred to have committed it and the other three to have been present aiding and abetting him. The appellants were so charged.
The man who was the victim's escort at the time of the incident was on the witness stand describing the experience. According to his testimony, the two were sitting in a motorcar, which was parked on a lonely road, when they were accosted by the four men who were hooded, masked and armed, some with guns, some with knives, some with both. He detailed the course he and the prosecutrix had taken during several hours prior to the time they stopped on the secluded road. After being there a short while, a car carrying four men stopped nearby and two of the men suddenly appeared at each front door of the witness' car. The doors were opened simultaneously and the witness was commanded to "get out." When he obeyed he was told to put his hands on top of the car. While he was in that position he was relieved of his wallet. Money was taken from the wallet and also from his pockets together with a knife and cigarette lighter. During this episode the other two men were giving their attention to the witness' companion.
At gun point the witness went to the rear of his car and got into the trunk whereupon the trunk was closed and the car driven a couple of hundred yards down the road. Two of the men then opened the trunk and one of them placed a shotgun against the witness' stomach and warned that if the witness started "anything" the gunman would blow a hole in him.
At this place in the testimony came the colloquy among the judge and counsel during which the challenged remark already quoted was uttered.
The testimony was challenged presumably because what occurred in the man's presence was, after he and the woman had *285 become separated, necessarily without the hearing of these appellants who had remained with her. The State Attorney replied that the persons named in the indictment were charged both as principals in the first and second degrees and that he considered the actions of all a part of the res gestae. Furthermore, he stated his view that when there is a conspiracy among persons to commit an unlawful act all are guilty as principals.
Defense counsel replied that inasmuch as the sole crime with which the men were charged was rape, evidence of any other violation of the law was collateral and improper. He was referring, of course, to the testimony about the robbery and was insisting that robbery and the crime formally charged were dissociated. After the attorney reiterated that the offenses were unrelated the court ruled, correctly we think, that the occurrences were part of the res gestae, Nickels v. State, supra, and then he added that the testimony was relevant under the theory of conspiracy as well.
Immediately the attorney challenged the reference to conspiracy and moved for a mistrial saying he thought it was improper for the court "to state that at this time." The court said that he was merely answering counsel's argument and repeated that he thought the testimony was competent. Then the attorney requested the court "to correct any impression" made by the statement that a conspiracy had been shown and the judge thereupon told the jury he did not wish to comment on the evidence and had no right to do so, and he directed the jury not to consider his reference to a conspiracy. The attorney still insisted that a mistrial be declared and he was overruled.
After an intense study of the parts of the record relevant to the remark of the judge, which appellants so strenuously attack, we conclude that we can only hold that it was prejudicial, reversible error. Certainly persons charged with a crime, no matter how heinous it may be, are entitled to a fair trial in accordance with law and with precedents established through the years. One of the oldest of these under our system is an inhibition against any comment by the judge on the evidence in the case. It was stated with clarity and emphasis in the opinion in Leavine v. State, supra [109 Fla. 447, 147 So. 902]: "* * * a trial court should avoid making any remark within the hearing of the jury that is capable directly or indirectly, expressly, inferentially, or by innuendo of conveying any intimation as to what view he takes of the case or that intimates his opinion as to the weight, character, or credibility of any evidence adduced."
The rule was announced as early as 1896 in Lester v. State, 37 Fla. 382, 20 So. 232, and was re-announced as late as 1952 in Seward v. State, supra. We adhere to it now for the reasons so often given, namely, that the facts are left to the independent and unbiased consideration of the jury and the judge should not enter their sphere of operation else the accused would be deprived of his right to trial by a jury. Because of the judge's exalted position his appraisal of testimony would likely give such emphasis to it as to influence the jury in their deliberation.
We construe the judge's observation to have meant that he believed the appellants as well as their accomplices were acting in a conspiracy. He undertook to remedy the harm by directing the jury not to consider his statement because he had no right to make it but this effort could not have been construed as a refutation of his belief that the conspiracy had been established.
The State attempts to meet appellants' argument on four grounds. One, that the trial court instructed the jury to disregard what he had said, we have already decided. The State argues that the challenged remark was not a formal charge but only an incident to a ruling on evidence. This position may be answered by a reference to West v. State, 55 Fla. 200, 46 So. 93, *286 later cited in Osius v. State, 96 Fla. 318, 117 So. 859. In the opinion in the former case the court said that remarks of "the trial judge in the hearing of the jury will have the same effect as a formal instruction." [55 Fla. 200, 46 So. 96.] The State's third reason for insisting that the comment was innocuous follows: "The intended meaning of the Court, as shown by the statement itself, was plain." In supporting this ground in the brief the State says, in effect, that the judge was only explaining his ruling. But we think he did much more than that. He did not give as a reason for his ruling that testimony had been adduced with reference to a conspiracy but that a conspiracy had been "shown."
Finally, the State insists that no prejudice resulted because the guilt of the appellants was "clearly established" and that any error should be considered harmless in view of the provisions of Sec. 924.33, Florida Statutes 1955, and F.S.A. This law simply provides that a judgment shall not be reversed unless the appellate court concludes that "error was committed which injuriously affected the substantial rights of the appellant."
To begin, we refer to the opinion of this court in Way v. State, Fla., 67 So.2d 321, holding that a statute similar in all important respects, Sec. 54.23, Florida Statutes 1955, and F.S.A., did not apply to a violation of Sec. 918.09, Florida Statutes 1955, and F.S.A., in a prosecution for larceny during the argument of which the prosecutor called the jury's attention to the failure of the defendant to testify in his own behalf.
The present case is much more serious as the appellants face death in the electric chair.
Even if we resolve this court into a jury and decide from the cold type of the record, without seeing a single witness, that the elements of the alleged crime had been proved to the exclusion of and beyond a reasonable doubt, the harm to appellants would not necessarily be cured.
This is a responsibility we reject. If the rule to which we have referred is sound, and this court has thought for over half a century that it was, then when it was violated reversible error was, in our opinion, unquestionably committed. And how are we to determine what effect it had on the conclusion of the jury. Assuming for the moment the State's argument that the proof of guilt was "clearly established" we cannot agree with the State's contention that "there is no reason to believe that any verdict other than that of guilty as charged could possibly have been arrived at." (Italics supplied.) In this statement the possibility that a recommendation of mercy might be included in the verdict is ignored. Such a recommendation would reduce the penalty from death to imprisonment for life or "any term of years within the discretion of the judge." Sec. 794.01, Florida Statutes 1955, and F.S.A. So a verdict of guilty in a prosecution for rape may result in a variety of punishment.
Who is there to gainsay that but for the questioned remark seven jurors would have recommended mercy? Not we. The difference, to the appellants, would have been the one between life and death. Even when a recommendation of mercy is incorporated in the verdict, the defendant must have been proved "guilty beyond and to the exclusion of a reasonable doubt." Davis v. State, Fla., 90 So.2d 629, 631. If the State's premise, that such was the degree of proof in this case, is accepted, it does not lead to the conclusion that death should result.
For the error we have discussed the judgment is reversed and the cause is remanded for retrial.
TERRELL, C.J., and HOBSON, THORNAL and O'CONNELL, JJ., concur.