ALLEN, Chief Judge.
The appellant-defendant was charged by information in the lower court with having certain fresh water fish in his possession in violation of Sec. 9.0S, Wild Life Code of Florida, and with attempting to bribe a Wild Life Officer. The defendant was arraigned and plead not guilty. The defendant filed a motion to quash the information and to suppress the evidence which was denied.
An amended information was filed charging defendant with the two charges stated', above and the defendant again filed a motion to quash the charge and suppress the evidence. The defendant was tried and found guilty of attempted bribery. The court granted defendant’s motion for a new trial and a second amended information was filed charging defendant with corruptly offering, promising and attempting to give to Wild Life Officer a gift or gratuity, to-wit: money of an unknown amount in currency of the United States of America with the intent to corruptly influence the act, opinion, decision and judgment of the Wild Life Officer in his capacity as such Wild Life Officer. The defendant’s motion to quash was denied and the case was tried before a jury.
The jury found the defendant guilty as charged and, after defendant’s motion for new trial was denied, the court adjudged, defendant guilty and sentenced him to serve one year in the Polk County jail.
The evidence, as such, is not questioned on appeal, but the appellant does raise certain alleged errors pertaining to the information and certain occurrences during trial. The second amended information, provides in part:
“ * * * [D]id then and there corruptly offer, promise and attempt to give to one J. W. Crum, Wild Life Officer of the State of Florida, who was then and there a duly appointed and qualified Wild Life Officer, a certain gift or gratuity, to wit: money of an unknown amount in currency of the United States of America, with intent to corruptly influence the act, opinion, decision, and judgment of the said J. W. Crum in his capacity aforesaid, on a certain matter which might, by law, come or be brought before him, the said J. W. Crum, in his capacity as aforesaid, to wit: the illegal possession of *93 fresh water game fish in that the said Arlington Troupe being a retail fish dealer did knowingly have in his possession and on the premises of his retail fish business where said business was carried on or conducted, fresh water game fish then and there well knowing the said J. W. Crum to be such Wild Life Officer of the State of Florida, contrary to the form of Statute in such case made and provided, and against the peace and dignity of the State of Florida.”
J. W. Crum, a Wild Life Officer for the Game and Fresh Water Fish Commission, testified that he went to the defendant’s store in Mullinsville, near Frostproof, on July 16, 1959, between 8:00 and 9:00 P.M.; that the store was open at the time; that the defendant permitted him to look into a freezer at which time he saw several pounds of bream and bass; that a little boy opened another freezer to get some ice cream at which time he saw 60-70 pounds of game fish; that he told defendant he was going to be taken to Bartow; and that defendant then invited Crum into the back room and offered Crum some money stating:
“Mr. Bossman, I want to give you some hush money to forget this thing.”
Raymond Hitch, a Florida Forest Ranger, testified that he was with Crum at the time of the visit to defendant’s store; that he did not hear what went on in the back room; but that the other matters occurred in the manner stated by Officer Crum.
The defendant’s points 1, 2 and 3 were grouped and argued together and questioned the denial by the lower court of defendant’s motion to quash the information on certain grounds which we will discuss separately.
The defendant, in his brief, cites the case of Brunson v. State, 70 Fla. 387, 70 So. 390, as authority for the validity of his motion to quash. The brief quotes from Brunson v. State, supra, as follows:
“ * * * [T]he information fails to allege that Dade County had voted dry, so as to render it unlawful to sell intoxicating liquors therein, or that such officer had any power or authority to permit the defendant to sell intoxicating liquors therein, but only charges that the defendant offered such officer a gift or gratuity in money, without undertaking to specify the value thereoft with intent to influence such officer to permit the defendant to ‘sell liquors unlawfully in Dade county, Florida, without interference from’ such officer. The statute does not make it unlawful to sell ‘liquors’ in any county, but to sell ‘spirituous, vinous or malt liquors in any county or precinct which has voted against the sale of such liquors, under the provisions of article 19 of the Constitution of the State of Florida.’ * * * ” (Emphasis added.)
The defendant here then states in his brief:
“ * * * [A]nd in the instant case, as in the Brunson v. State case, they use the terms ‘money of an unknown amount, currency of the United States of America’ without stating that it was a thing of value and in the Brunson v. State case it was held that it was essential that the word money was not sufficient without stating that it was of value. * * *”
An examination of the information in this case shows that it is predicated on the provisions of Section 838.011, Florida Statutes, F.S.A., which provides as follows:
“Any person who shall corruptly give, offer or promise to any public officer, agent, servant or employee, after the election or appointment or employment of such public officer, agent, servant or employee and either before or after he shall have been qualified or shall take his seat, any commission, gift, gratuity, money, property or other valuable thing, or to do any act beneficial to such public officer, agent, servant or employee or another, with the in *94 tent or purpose to influence the act, vote, opinion, decision, judgment or behavior of such public officer, agent, servant or employee on any matter, question, cause or proceeding which may be pending or may by law be brought before him in his public capacity, or with the intent or purpose to influence any act or omission relating to any public duty of such public officer, agent, servant or employee, or with the intent or purpose to cause or induce such public officer, agent, servant or employee to use or exert or to procure the use or exertion of any influence upon or with any other public officer, agent, servant or employee in relation to' any matter, question, cause or proceeding that may be pending or may by law be brought before such other public officer, agent, employee or servant, shall be guilty of the crime of bribery.”
In Brunson v. State, supra [70 Fla. 387, 70 So. 391], the Supreme Court, in its opinion, stated that the information was founded upon Section 3476 of the General Statutes of Florida, which read as follows:
“ ‘Whoever corruptly gives, offers or promises to any executive, legislative or judicial officer, after his election or appointment, either before or after he is qualified, or has taken his seat, any gift or gratuity whatever, with intent to influence his act, vote, opinion, decision or judgment on any matter, question, cause or proceeding which may be then pending, or which may by law come or be brought before him in his official capacity, shall be punished by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding one year, or by fine not exceeding three thousand dollars.’ ” (Emphasis added.)
The above Section 3476 of the General .'Statutes of Florida has been brought forward and substantially incorporated into the ■current Section 838.01, Florida Statutes,. F.S.A. It is noted that both Section 3476 and the current Section 838.01 refer to a “gift or gratuity,” whereas Section 838.011, Florida Statutes, F.S.A., refers to “any commission, gift, gratuity, money, property or other valuable thing, or to do any act beneficial to such public officer, agent, servant or employee or another. * * *” (Emphasis added.)
The Supreme Court of Florida held in Brunson v. State, supra, that an information based on Section 3476 of the General Statutes charging the defendant with an attempt to bribe a deputy sheriff to permit the defendant to sell liquor unlawfully in Dade County, Florida, without interference from such officer is fatally defective, in that it failed to allege that the defendant had attempted to bribe an official to permit the defendant to sell “spirituous, vinous or malt liquors in any county or precinct which has voted against the sale of such liquors,' under the provisions of article 19 of the' Constitution of the state.of Florida,” without interference from such officer. The Court also held that an information for bribery or attempted bribery must allege' that something of value was given, prom-’ ised, or received; but all that is essential is an allegation that it was of value; and that an allegation that “a certain gift or gratuity, to-wit: money,” was offered, without alleging that the money was of value, was insufficient under Section 3476, General Statutes.
Brunson v. State, supra, was decided in 1915, whereas Section 838.011, Florida Statutes, F.S.A., under which the information in the instant case was filed, was part of Chapter 29722, Laws of Florida, 1955. By virtue of Section 838.011, the corrupt offering of any “gift, gratuity, money, property or other valuable thing” to any public officer, agent, servant, or employee, with the intent or purpose to corruptly influence the act, vote, opinion, decision, judgment or behavior of such public officer, agent, servant or employee on any matter, question, cause or proceeding which may be pending or may *95 by law be brought before him in his public capacity constitutes the crime of bribery.
We are of the opinion, therefore, that the holding of Brunson v. State, supra, in construing Section 3476, General Statutes, would not be authority, under the facts of this case, to hold an information based on Section 838.011, invalid. In Brunson v. State, it was alleged that the accused offered a gift or gratuity, to-wit: money, while in the instant case the allegations were that the accused offered “ * * * a certain gift or gratuity, to-wit: money of an unknown amount in currency of the United States of America.” We must conclude that the allegation of the bribe offered as being "an unknown amount of money in currency of the United States of America” is a sufficient allegation of value under the language of Section 838.011.
In this case the officer, acting upon reliable information, went to defendant’s retail store and found illegal possession of fresh water game fish by defendant, and that defendant was acting as a retail fish dealer. Moreover, it is admitted by defendant that he knew the officer, J. W. Crum, was a Wild Life Officer of the State of Florida.
The defendant contends that since he did not have a license, it was error to charge that he could still be a retail fish dealer. A retail fish dealer is described by the statute as anyone who sells fish or supplies in any manner direct to the customer or to a wholesale dealer. As a retail dealer he is then required to have a license, but he is a dealer whether he has a license or not. If he does not have a license then, of course, he is subject to a penalty for doing business without a license; but the question of whether or not a man has a license is not material in determining whether or not he is a retail fish dealer.
The law also provides that no wholesale or retail fish dealer except one dealing exclusively in bait minnows shall jcnowingly have, allow or permit any fresh water game fish to be stored on, in, or about the premises where such wholesale or retail fish business is being carried on or conducted. Fish legally caught may be kept in public cold storage, refrigerators, ice houses or ice boxes when packaged or on strings with tag or tags clearly identifying the owner of such fish, and his license number clearly written thereon, if license is required therefor.
There was evidence adduced from which the jury could, if they believed it beyond a reasonable doubt, find that the defendant offered to the Wild Life Officer a sum of money in currency, and that the defendant’s purpose in so doing was to' influence the Officer, in the performance of his duties, in his decision whether to arrest the defendant for having in his possession a large amount of fresh water game fish.
The defendant next asserts as error the instruction on the recommendation of mercy. As the judge concluded his instructions, the State requested him to charge on recommendation of mercy. The court then added:
“You have a perfect right, of course, if you find the defendant guilty and you feel you should to recommend mercy. However, that is not binding on the Court. It is the Court’s duty to mete out punishment, but it is an indication to the Court how you feel about the matter of punishment. * * * ”
The attorney for the defendant objected,, stating:
“Out of the presence of the jury and before the jury retired to consider its verdict, comes now the defendant and objects to the Court’s statement about recommending mercy as suggested by the Solicitor after the Court had finished charging the jury, as being improper and could have no bearing except to influence the minds of the jury to return a verdict of guilty.”
*96 Section 919.23(1), Florida Statutes, F.S. A., provides:
“In all criminal trials, the jury, in addition to a verdict of guilty of any offense, may recommend the accused to the mercy of the court or to executive clemency, and such recommendation shall not qualify the verdict except in capital cases. In all cases the court shall award the sentence and shall fix the punishment or penalty prescribed by law.”
We are of the opinion that the charge in the instant case came within the permissive provision of the statute on the recommendation of mercy. See Osius v. State, 96 Fla. 318, 117 So. 859.
Despite the persuasive argument of counsel for defendant, and after a careful review of the record, briefs, and argument of opposing counsel, we find that the doctrine of double jeopardy can in no wise be applicable herein.
Turning to the last question, we note that the appellant states as point 6 in his brief:
“Whether the Court erred in denying defendant’s Motion to Quash the Charge and Strike the Testimony of J. W- Crum as same was obtained by an illegal search of the defendant’s premises and without a search warrant and without an arrest warrant and without the defendant committing a crime in the presence of the officer.”
The appellant, in his brief, states:
“That the Lower Court has already held and ruled that the evidence obtained by J. W. Crum was obtained by an illegal search and in violation of the Defendant’s Constitutional rights because same was obtained without a. search warrant and not incident to a lawful arrest (TR-14-15) wherein the Court granted a Motion for New Trial based on these grounds.”
Appellant filed a motion for new trial after the first trial resulted in a verdict of guilty, in which it was alleged, among other grounds, that the evidence obtained was in violation of the defendant’s constitutional rights. The lower court, however, in his order granting a new trial, did not specify upon what grounds the new trial was granted. The Wild Life Officer testified that he went to the retail establishment of the defendant at Mullins-ville at between 8 and 9 o’clock at night; that he went there looking for fish which he found in the defendant’s possession; that he found fish in one refrigerator and also found in another freezer approximately 70 pounds of game fish; and that he talked with the defendant for a while and started to put him under arrest when the defendant said: “I want to see you in the back room, Mr. Bossman.”
The Officer then testified as follows:
“A. I walked in the back room, which is a partition between the store and his residence. When we got to the back room, he went to the dresser drawer and pulled out an amount of money — I cannot tell you how much it was — and said, ‘Mr. Bossman, I want to give you some hush money to forget this thing.’

“Q. Were you able to see what he had in his hand? A. Yes, sir.
“Q. What was it? A. It was money, sir.
“Q. United States currency? A. Yes, sir, it was.
“Q. How big— Was it just folded like a couple of bills? A. No, sir; rolled up in a roll. He had it in the palm of his hand.

“Q. Had you already told him, sir, what your purpose in being there was? Had you identified yourself ? A. Yes, sir; I had.

*97 “Q. Now, what was this establishment that you went into to see him? A. It is a retail establishment; he sells sandwiches, drinks, and a few' groceries there; and also he had been selling catfish there. He stored catfish in the establishment.
“Q. Does he have freezers there of some kind? A. Yes, sir; he does.
“Q. But it is a regular retail store? A. Yes, sir; that’s correct.
“Q. Was it open at the time you went there? A. Yes, sir; there was people in the establishment.
“Q. Was it your duty at the time you were there if you found a violation of the Fish and Game Laws as to possession of fresh water fish violations to make an arrest? A. Yes, sir; that’s correct * *
The Court then asked the Wild Life Officer:
“Q. You say that you went there as a result of information that you had? A. Yes, sir; that’s correct.
“Q. Was that information from a source you considered to be reliable? A. Yes, sir, I do — very much so.
“Q. Was it such to lead you to believe that there was a violation of law going on there? A. Yes, sir.
“Q. As a result of that you went there to make your search ? A. That’s correct, sir.”
In the cross-examination the Officer further stated:
“Q. Did you see him violating any law that you knew of until you searched in his ice boxes, in these freezer boxes, and found this fish? A. No, sir.
“Q. In other words, you • gained your information by going into his deep freezes, or deep freeze boxes, and gaining that information? A. Yes, sir, with his permission.
“Q. I say, that’s where you got it?' A. That’s correct. No, I did not. I had information before I went there to look.
“Q. You had information before? A. That’s correct.

“Q. Was there anything discussed between you and the defendant about him putting up bond? A. Yes, sir, there was.
“Q. When was that discussion ? A. That was discussed before I found the second batch of fish in the freezer.

“Q. That was before you found some more fish? A. Yes, sir.”
Raymond Hitch testified that he was in the company of Officer Crum who had gone by to check Arlington Troupe on a fish license he was supposed to receive from Tallahassee to sell' fresh water fish, catfish, and he’d gone in there to check with him to see if he had his license, if he had received it.
The following testimony took place:
“Q. He had not received it? A. No, sir. I think when Mr. Crum had been there before he did not have the application for Mr. Troupe and he had given him the application then at that time.
“Q. You went- — did you go in the place of business? A. Yes, sir, I stepped inside the door.
“Q. Would you tell us what happened after you stepped inside? A. Officer Crum walked in, talked to Arlington Troupe a while and asked if he could look in his refrigerator and he said, ‘Yes.’ He opened it up and there was some fresh water game fish in there — some bass and bream.
“He started talking to Arlington Troupe and told him he’d told him once before that it was, that was, a viola *98 tion. And a little colored boy came in to buy some ice cream, and he opened up a deep freeze. When he did, Officer Crum looked down in the deep freeze and the .deep freeze was full of game fish.
“Q. Then what happened? A. Then Officer Crum told Arlington Troupe that he was going to have to come over to Bartow. * * * ”
This witness further said that on the way to Bartow Arlington Troupe said he was sorry he had hit the sore spot'; that he did not know that offering Officer Crum some money would make him so mad.
This witness also said he heard Officer Crum ask Troupe if he could look'in his ice box and he said “yes.”
Under the evidence adduced above, we do not think the defendant can complain of an illegal search.
We are of the opinion that the lower court should be and is affirmed.
Affirmed.
SHANNON, J., and SPOTO, I. C Associate Judge, concur.