CIKLIN, J.
Raising a plethora of issues, Todd Becker appeals his conviction for solicitation to commit home invasion robbery and subsequent fifteen-year sentence. We find that an improper prosecutorial comment during closing argument warrants reversal of his conviction and remand for a new trial.
The state charged Becker with conspiracy to commit home invasion robbery with a firearm, solicitation to commit home invasion robbery with a firearm, and possession of a firearm by a felon. The case proceeded to jury trial in December of 2010.
An informant — a fourteen-time convicted felon who was on probation during the trial — (hereinafter “the informant”) testified that he knew Becker from childhood. In April of 2007, Becker called the informant to arrange a meeting, at which time Becker explained that he was trying to obtain a gun so that he could perpetrate a home invasion robbery on the west coast of Florida. The informant agreed to help Becker obtain the firearm. According to the informant, he intended to participate in the robbery but ultimately changed his mind, because he did not want to go back to prison or be involved in criminal activity any longer. A few days later, the informant told his former federal probation officer about Becker’s plan.
The informant was referred to a nearby FBI office where he met with FBI agents about the matter. Later that day, the informant made several FBI monitored and recorded telephone calls to Becker to *475 discuss how to obtain firearms for the robbery. In one of the calls, Becker spoke to an undercover FBI agent acting as a firearms dealer. Recordings of the controlled telephone calls between Becker, the informant and the agent were played for the jury. Accompanied by the undercover agent, the informant then met with Becker in a commercial center parking lot so Becker could purchase a gun.
On direct examination, the informant — a key state witness — denied receiving any benefit from the FBI or the state in exchange for his cooperation:
The state: Did you get paid any money for assisting them (the FBI)?
The informant: No.
The state: Did you have any pending charges at the time?
The informant: No.
The state: Did you ask them to assist you in any way?
The informant: No.
The state: Were you getting any type of benefit for going to the FBI?
The informant: No.
[[Image here]]
The state: Now for your testimony here today, are you getting any benefit or compensation from the state or the government?
The informant: No.
The state: Is there any expectation to get any benefit or compensation from the state or the government regarding your testimony?
The informant: No.
On cross-examination, defense counsel elicited from the informant that he had been arrested twice since Becker’s arrest and faced significant prison time, but yet was placed on probation for both new felonies:
Defense counsel: And in fact, since this arrest was made back in 2007, you were arrested for another felony in 2008; isn’t that correct?
The informant: Yes.
Defense counsel: And in fact, you were facing over ten years in prison on that charge; is that correct?
The informant: Yes.
Defense counsel: And in fact, you didn’t serve a day in prison; isn’t that correct?
The informant: Yes.
Defense counsel: You just got straight probation?
The informant: Yes.
Defense counsel: And then even further, in 2009 you were again arrested for another felony; isn’t that correct?
The informant: Yes.
Defense counsel: Okay. And again you were facing significant prison time?
The informant: It was altogether, all the charges, yes.
Defense counsel: But you were facing additional prison time for another case?
The informant: Yes.
Defense counsel: And again instead of serving one day in prison, you just got straight probation; isn’t that correct?
The informant: Yes.
On redirect, the informant denied receiving any guarantees from the state in exchange for his testimony:
The state: Currently on probation?
The informant: Yes.
The state: Has the state guaranteed you or told you that anything is going to happen by you testifying today?
The informant: No.
The state: Do you believe that the state is going to give you any benefit by you testifying today?
The informant: No.
*476 The state: Is that influencing your testimony at all today?
The informant: No.
The undercover FBI agent testified that once in the commercial center parking lot, Becker approached the agent and the informant and purchased a firearm. The agent placed the gun, contained within a box, inside the informant’s car trunk, per Becker’s instructions. Becker told the agent that he would be returning the weapon to him within twenty-four hours because he would be done using it by then. When Becker began walking back to his vehicle in the parking lot, he was arrested.
During closing arguments, defense counsel stated the following:
Now the state is contending that ... [the informant] who was a many-time convicted felon before this case, is facing over ten years in prison, doesn’t see one day inside. Doesn’t do one day of time. But he wasn’t expecting to get anything to testify here. Maybe not on the books, but it’s very clear why he’s doing it. It’s very clear.
In response, the prosecutor made the following statement during rebuttal closing argument:
The state: Defense says, well you know, [the informant] must be getting something. There must be something off the books. I can stand here today, ladies and gentlemen, as an officer of this Court, and tell you that [the informant] is not getting anything out of this.
Defense counsel: Objection—
The court: Overruled.
The state: —for testifying except for the $6 witness fee that any other witness gets, that pays for their parking. That’s the only thing [the informant] is getting out of this. There’s no agreement from the state for [the informant] to get any lessening of any charges or any probation he is on.
The jury acquitted Becker of the conspiracy and possession of a firearm by a felon charges, but found him guilty of solicitation to commit home invasion robbery, for which the trial court sentenced the defendant to fifteen years in prison. Becker timely appeals his conviction.
On appeal, Becker argues that the prosecutor’s comment during rebuttal closing argument in which he personally guaranteed that no deal was made between the state and the informant for his testimony was an improper prosecutorial comment.
“It is within the court’s discretion to control the comments made to a jury, and a court’s ruling will be sustained on review absent an abuse of discretion.” Salazar v. State, 991 So.2d 364, 377 (Fla.2008) (citation and quotation marks omitted).
We begin our analysis by reviewing defense counsel’s cross-examination of the informant which ultimately led to the closing arguments at issue. Clearly, the question of the informant’s credibility was paramount to Becker’s defense. Becker’s attorney was well within the bounds of permissible cross-examination when he engaged in this line of questioning. The Florida Evidence Code provides that “[a]ny party ... may attack the credibility of a witness by ... [s]howing that the witness is biased.” § 90.608(2), Fla. Stat. (2010). “Included in the types of matters that demonstrate bias are prejudice, interest in the outcome of a case, and any motivation for a witness to testify untruthfully.” Jones v. State, 678 So.2d 890, 892 (Fla. 4th DCA 1996) (citations omitted). “[A] defendant is afforded wide latitude to develop the motive behind a witness’ testimony.” Barows v. State, 805 So.2d 120, 123 (Fla. 4th DCA 2002) (citation and quotation marks omitted). Further, and importantly in this case, “[c]ourts should even allow inquiries that might at first *477 blush appear to be lacking any basis at all thus far in the trial, so long as counsel states a basis tending ultimately to show such bias.” Id. (citation and quotation marks omitted).
While the informant denied receiving a benefit from the state in exchange for his testimony, this did not foreclose the possibility of potential bias. “Testimony given in a criminal case by a witness who himself is under actual or threatened criminal investigation or charges may well be biased in favor of the State without the knowledge of such bias by the police or prosecutor because the witness may seek to curry their favor with respect to his own legal difficulties by furnishing biased testimony favorable to the State.” Breedlove v. State, 580 So.2d 605, 608 (Fla.1991) (citation omitted).
Unfortunately, the trial proceedings below became problematic once closing argument commenced. Becker was denied his right to a fair trial when the prosecutor vouched for the informant’s credibility. Simply stated, the prosecutor was not permitted to give his personal assurances that the informant received nothing in exchange for his testimony.
“Improper bolstering occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness’s testimony.” Hutchinson v. State, 882 So.2d 943, 953 (Fla.2004), abrogated on other grounds by Deparvine v. State, 995 So.2d 351 (Fla.2008). In Williamson v. State, 994 So.2d 1000 (Fla.2008), the Florida Supreme Court reviewed a prior case relevant to this issue:
In Ruiz v. State, 743 So.2d 1 (Fla.1999), this Court held that an attorney’s role in closing arguments is to simply assist the jury in analyzing, evaluating, and applying the evidence, including the attorney’s suggestions as to what conclusions can be drawn from the evidence. Id. at 4. An attorney cannot, however, obscure the jury’s view with personal opinion about the merits of the case or the credibility of the witnesses. Ruiz explicitly warned that “[i]t is particularly improper, even pernicious, for the prosecutor to seek to invoke his personal status as the government’s attorney ... as a basis for conviction of a criminal defendant.” Id. at 4.
Williamson, 994 So.2d at 1012. Finally, “[ijmproper prosecutorial ‘vouching’ for the credibility of a witness occurs ‘where a prosecutor suggests that she has reasons to believe a witness that were not presented to the jury,’ or, stated differently, where the prosecutor ‘implicitly refers to information outside the record.’ ” Jackson v. State, 89 So.3d 1011, 1018 (Fla. 4th DCA 2012) (quoting United States v. Rivas, 493 F.3d 131, 137 (3d Cir.2007)).
We must conclude that the prosecutor’s rebuttal to the defense closing argument constituted improper prosecutorial bolstering and vouching. In essence, the prosecutor offered extra-testimonial knowledge that the informant was not receiving a deal or other special treatment from the state (an integral part of Becker’s defense), and thus impermissibly corroborated the informant’s denial of such an arrangement. The prosecutor invoked his status as an “officer of [the] court” to assure the jury that the informant was being truthful.[1] This undermined the integrity of the judicial process and irreparably contaminated the verdict and resulting sentence.
The state claims that its error was harmless; we disagree. More than any other evidence, this trial came down to the informant’s testimony. Whether the infor *478 mant was testifying in exchange for some type of preferred arrangement or out of a desire to curry favor with the state was critical to the presentation of Becker’s defense. We cannot, therefore, say beyond a reasonable doubt that the prosecutor’s comment, one of the last comments the jury heard before beginning its deliberations, did not contribute to the verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
Therefore, we reverse Becker’s conviction and remand for a new trial.[2]

Reversed and remanded.

WARNER and DAMOORGIAN, JJ., concur.

. The prosecutor was free, of course, to suggest to the jury that at no point during the trial did anyone actually testify or present any other evidence showing that a deal had been *478 reached between the state and the informant in exchange for the informant's testimony. It is not our intent to suggest that the prosecutor intentionally propounded a closing argument that exceeded the wide latitude afforded to attorneys in arguing to a jury. Indeed, closing argument is an art form in itself. As in this case, however, attorneys must be mindful of their parameters and not get caught up in the aura of frenetic trial advocacy.

. We have considered the remaining issues raised by Becker and affirm without comment.