DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LEONARD JENNINGS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-3695

[April 15, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Usan, Judge; L.T. Case No. 17-1203 CF10A.

Carey Haughwout, Public Defender, and Nancy Jack, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Senior Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

The defendant appeals from his conviction for one count of possession of cocaine with intent to deliver or sell. He raises five grounds, two of which have merit.

First, after the lead detective testified about having used for years the informant used in this case, the trial court erred when it permitted the state, over the defendant's objection, to bolster the informant's credibility by asking the officer, "Have you found [the informant] to be reliable in the past?", to which the officer answered, "Yes, I have." We conclude this was error, requiring reversal for a new trial.

Second, during voir dire, after the trial court gave a general explanation about the rules of evidence, the trial court commented that the rules "will only allow the most reliable type of evidence to be considered by jurors." The defense objected to the improper comment and moved to strike the venire. The trial court overruled the objection and denied the motion. We conclude the trial court's statement was error, especially in a case like this one where the only evidence was expected to come from the state. Though

striking the venire may not have been necessary if the trial court had given a curative instruction to cure the error, no curative instruction was given. Thus, we reverse on this second ground as well.

### ***Commenting on the informant's reliability in the past***

The defendant was arrested one month after allegedly selling drugs to a compensated police informant in a controlled street buy. The case proceeded to trial. The defense theorized in opening statement this was a case of mistaken identity because the police nearby could not clearly see the seller's face, the arrest did not occur until one month after the alleged sale, and the informant's trial testimony would not be reliable.

During the state's case-in-chief, the lead detective was on the witness stand, explaining how he came to be involved in the case, when the following discussion occurred:

> [STATE]: Okay. And so after you received the tip from Crime Stoppers, what did you do?
>
> [DETECTIVE]: After I received a tip I was able to contact the informant who I've used years now. And I informed him about the tip and asked him if he would like to assist in this investigation.
>
> [STATE]: When you say you've utilized the informant for years, have you found him to be trustworthy and reliable in the past?
>
> [DEFENSE]: Your Honor, I'm going to move to go side bar. [At side bar] I move to strike the question and answer at this time. As far as this going to the testimony and if [the informant] is clearly reliable and credible. [The state is] asking [the detective] to comment on that.
>
> THE COURT: The exact question you asked was?
>
> [STATE]: When you are utilizing the informant do you determine him to be reliable. It's not bolstering. It's just whether or not he's [been] found to be reliable, not why he's

2

being utilized. . . . I have to establish that the informant [whom the detective is] using is reliable.

. . .

THE COURT [to the state]: I'm going to ask that you rephrase the question.

[The attorneys leave the bench.]

. . .

[STATE] [to the detective]: Have you found [the informant] to be reliable in the past?

[DETECTIVE]: Yes, I have.

. . .

[DEFENSE:] Object. [Move to] [s]trike.

THE COURT: Overruled.

The informant later testified that when he initially met with the defendant, the defendant gave him a phone number to call. The detective had the informant participate in a recorded call, during which the informant arranged for a meeting to purchase drugs. At the meeting, the informant paid the person whom he believed was the defendant using investigative funds, and the person handed cocaine to the informant. One month later, the police arrested the defendant as the person who allegedly had sold the cocaine to the informant.

During the informant's trial testimony, he described himself and his motivation for assisting the police: "I'm a brave soldier. According to the Geneva Convention I am an American fighter man. I protect my country from all enemies, foreign and domestic. Drug dealers are domestic enemies." He added that he does it "for the four dead girls I have in my phone . . . [who] won't be home Thanksgiving . . . ." He claimed that over the past twenty-four years, in Florida and elsewhere, he has assisted law

enforcement in 869 transactions and remembers each and every one of them. He further testified he was in the military, and is a convicted felon.

Another detective testified that he observed the exchange from 100 to 150 feet away. He said the defendant passed something to the informant, but he could not see whether it was cocaine, and then the informant gave the defendant what appeared to be money "because it was balled up a bit."

The defendant ultimately was found guilty of one count of possession of cocaine with intent to deliver or sell. This appeal followed.

A ruling on the admissibility of evidence is reviewed for an abuse of discretion, limited by the rules of evidence. *Washington v. State*, 985 So. 2d 51, 52 (Fla. 4th DCA 2008).

"It is elemental in our system of jurisprudence that the jury is the sole arbiter of the credibility of witnesses. Thus, it is an invasion of the jury's exclusive province for one witness to offer [their] personal view on the credibility of a fellow witness." *Page v. State*, 733 So. 2d 1079, 1081 (Fla. 4th DCA 1999) (citations omitted).

"[I]mproper vouching or bolstering [of witness testimony] occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony." *Jackson v. State*, 147 So. 3d 469, 486 (Fla. 2014) (citations omitted). "It is especially harmful for a police witness to give his opinion of a witnesses' credibility because of the great weight afforded an officer's testimony." *Page*, 733 So. 2d at 1081.

*Page* is similar to this case. There, an informant assisted the police with a controlled buy, which led to Page's arrest. *Id.* at 1080. Like the informant in this case, the informant in *Page* was compensated and was a felon. *Id.* At trial, a police officer testified that he had known and worked with the informant for a year and a half, and that he found the informant to be "very trustworthy and reliable." *Id.* at 1081. We found the trial court erred when it overruled a defense objection to the officer's testimony. *Id.* We noted that the harm was "all the more significant when the witness whose credibility is bolstered is the only eye witness to testify about the transaction." *Id.*

4

Likewise here, the trial court erred by overruling the defense objection to the lead detective's testimony that he found the informant to be reliable in the past. This was improper vouching of the informant's credibility based on information not presented to the jury. The improper vouching was especially harmful because it came from a police officer. Further, the harm was enhanced when the informant whose credibility was bolstered was the only person within close proximity to the seller in the transaction.

Improper bolstering is subject to harmless error analysis. *Becker v. State*, 110 So. 3d 473, 477-78 (Fla. 4th DCA 2013). The harmless error test places the burden on the State, as the beneficiary of the error, to prove "there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).

The state cannot demonstrate the error was harmless on this record. While a witness's credibility remains a jury determination, here the informant's testimony may have made the jury think twice about his credibility, based on the facts that he was compensated, was a felon, expressed strong motivations for putting away drug dealers, and openly boasted about his success in having done so. The jury may have dismissed any potential misgivings about the informant's credibility based on the lead detective's opinion that the informant has been reliable in the past. Although another detective witnessed the transaction, his observation occurred from 100 to 150 feet away. Such a distance may have lent itself to the defense theory of mistaken identity, which theory was likewise supported by the fact that the arrest was made one month after the sale.

Based on the foregoing, we must reverse and remand for a new trial.

### *Commenting that only "the most reliable type of evidence" will be considered by jurors*

During voir dire, after the trial court gave a general explanation about the rules of evidence, the trial court commented:

> [T]he point of my explanation is to tell you that a jury in a criminal trial may only consider evidence which is admissible in court and not necessarily all of the evidence that may be available in the world. And while this procedure may not equate to your traditional notion of fairness, rest assured it is

5

as the result of many years of study and debate and *it will allow only the most reliable type of evidence to be considered by jurors*.

(emphasis added).

Defense counsel objected and moved to strike the venire on the ground that the trial court had improperly commented on the evidence. Defense counsel argued, in pertinent part:

> In this case, Judge, it's particularly inflammatory against the Defendant because the only evidence in this case is going to be presented by the State. And the Court has vouched for the credibility [of the state's evidence] by saying that [the jurors] are only going to receive the most credible [evidence] . . . It's contrary to the law that this jury should be allowed to accept or reject any evidence. . . . And in this case where the Defense has no witnesses and no evidence, the only evidence is the State's, we think it's inappropriate and grounds to strike the entire panel.

The trial court denied the defense's motion to strike the entire panel, reasoning as follows:

> Counsel, this instruction is in there to protect the Defendant. Oftentimes, there's an objection to hearsay. It shows neither side is trying to hide evidence but that this evidence has been deemed inadmissible by the Court.
>
> Additionally, it has been my experience over the years that frequently things are referred to such as depositions, police reports, other matters that do not come ·into evidence. And there are requests for these, which ultimately have to be turned down.
>
> This instruction advises them that there is always things that are outside of the Rules of Evidence. And we explain the Rules of Evidence exclude certain matters. So this instruction is there to protect both parties. And it is not a comment on the evidence because the evidence has not been introduced yet.

6

It would be improper for the Court to take a position on evidence that has already been presented and admitted into evidence by vouching for its credibility.

However, this instruction highlights for the jury the Court's gatekeeping function, which tells them that they should not be concerned with matters that the Court has excluded.

We recognize the trial court was merely attempting to educate the venire about why some evidence is admissible and other evidence is inadmissible, and was not attempting to bias the venire in the state's favor. We also recognize a potential juror may not have interpreted the trial court's explanation as suggesting the trial court was vouching for the credibility of the state's evidence, especially when the jury had not been selected, had not been given standard jury instructions on weighing the evidence, and did not know the only evidence would come from the state. We further recognize the possibility that the selected jurors may not remember or apply that isolated comment during their deliberations.

Having said that, we also understand the defense's argument as to why the trial court's comment that the rules "will only allow the most reliable type of evidence to be considered by jurors," was capable of misleading jurors, especially in a case in which it was expected that the only evidence would come from the state. In common use, the word "reliability" is often equated with accuracy. *See, e.g.*, *reliable*, Collins English Dictionary (digital ed. 2012), https://www.dictionary.com/browse/reliable?s=t (defining reliable as "that may be relied on or trusted; dependable in achievement, accuracy, honesty, etc.: reliable information."). This renders the jurors' potential of misinterpreting the trial court's statement as a reasonable possibility. Any juror with this misinterpretation in mind may have believed that he or she would only see accurate evidence.

Thus, we conclude the trial court's statement, though unintentional, was error. *See Raulerson v. State*, 102 So. 2d 281, 285 (Fla. 1958) ("[A] trial court should avoid making any remark within the hearing of the jury that is capable directly or indirectly, expressly, inferentially, or by innuendo of conveying any intimation as to what view he takes of the case or that intimates his opinion as to the weight, character, or credibility of any evidence adduced." (quoting *Leavine v. State*, 147 So. 897, 902-03 (Fla. 1933))).

7

Perhaps this error could have been cured. The trial court could have denied the motion to strike the venire, but sustained the defense's objection, and attempted to cure the error by referring to the applicable standard jury instructions. *See* Fla. Std. Jury Instr. (Crim.) 3.9 ("It is up to you to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict. You may find some of the evidence not reliable, or less reliable than other evidence. . . . You may rely upon your own conclusion about the credibility of any witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness."); Fla. Std. Jury Instr. (Crim.) 3.11 ("Deciding a verdict is exclusively your job. I cannot participate in that decision in any way. Please disregard anything I may have said or done that made you think I preferred one verdict over another.").

However, our referring to Standard Jury Instructions 3.9 and 3.11 at this point is not meant to suggest that had the trial court given those instructions, the error would have been cured. That is not what occurred, and therefore we cannot answer that question.

But by raising these points, we hope to point out two things to trial judges. First, when the possibility of error is raised that potentially may be cured, attempting to employ the cure may be a wise choice even if the judge steadfastly stands by the original ruling. Second, although this trial court remarked that it has made the objected-to statement within this introductory explanation for many years, that does not necessarily mean the statement was proper. Once a good faith objection has been raised, it is time to reconsider the statement from the objector's perspective to avoid the possibility of error.

Here, because we have found the objected-to statement to be in error, we trust the trial court here will simply eliminate that statement from its introductory explanation going forward.

### *Conclusion*

Based on the foregoing, we reverse and remand for a new trial. The three remaining grounds raised in this appeal lack merit and do not require further discussion.

8

*Reversed and remanded for new trial.*

LEVINE, C.J., CIKLIN and GERBER, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**

9